# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**MONICA FOSTER**
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE:

**MARSHA L. LEVICK**
Juvenile Law Center
Philadelphia, Pennsylvania

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE:
Marion County Public Defender Agency:

**ROBERT J. HILL**
**VICTORIA L. BAILEY**
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE:
Children's Law Center, Inc., National
Juvenile Defender Center, and Campaign
for Youth Justice:

**ERIN DAVIES**
Children's Law Center, Inc.
Covington, Kentucky

**MICHAEL JENUWINE**
Notre Dame Legal Aid Clinic
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
Dec 11 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

PAUL HENRY GINGERICH,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Appellant-Defendant,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀No. 43A05-1101-CR-27



STATE OF INDIANA,                                  )

)

Appellee-Plaintiff.                    )

---

**APPEAL FROM THE KOSCIUSKO CIRCUIT COURT**
The Honorable Rex L. Reed, Judge
Cause No. 43C01-1004-MR-77

---

**December 11, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Paul Henry Gingerich appeals his conviction for conspiracy to commit murder as a class A felony.[1] Gingerich raises five issues, one of which we find dispositive and which we revise and restate as whether the juvenile court abused its discretion when it denied Gingerich's request for a continuance of the waiver hearing.[2] We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In April 2010, Gingerich was twelve years and two months old, stood about 5'2", weighed about eighty pounds, and was a sixth grader at Wawassee Middle School. On April 20, 2010, Gingerich and Colt Lundy shot and killed Philip Danner, Lundy's stepfather, and they were subsequently apprehended in Peru, Illinois, while traveling to Arizona.

---

[1] Ind. Code § 35-41-5-2 (2004); Ind. Code § 35-42-1-1 (Supp. 2007).

[2] The State raises an issue on cross-appeal which is whether this appeal should be dismissed because Gingerich waived his right to appeal in his plea agreement and by pleading guilty. To the extent necessary, we will provide analysis of the State's cross-appeal issue within our analysis of the dispositive issue raised by Gingerich.

On April 22, 2010, the court held a detention/probable cause hearing in which Gingerich was represented by Thomas W. Earhart. Detention of Gingerich was authorized, the State requested to file a delinquency petition, the court authorized the filing of the petition, and the State filed a motion to waive juvenile jurisdiction pursuant to Ind. Code § 31-30-3-4. That same day, the court set the matter for hearing on April 29, 2010. On April 27, 2010, Gingerich filed a motion to continue the waiver hearing, stating that "such hearing date does not allow Counsel . . . sufficient time to prepare for such hearing" and noted specifically that "counsel needs time to (a) identify and interview potential witness[es] on behalf of [Gingerich]; (b) obtain and review exhibits for presentation; [and] (c) conduct its own investigations as it has not received from the State any witness or client statements, autopsy reports, coroner reports, ballistic reports or forensic reports." Appellant's Appendix at 10. Gingerich's counsel also stated in the motion that he "believes that it is in the best interest of his client that a psychological and/or psychiatric evaluation be done," that this could not be accomplished prior to the hearing, and concluded that "without additional time, the matters to be determined at the waiver hearing cannot be completely and fairly heard and determined." Id.

On April 29, 2010, the court denied Gingerich's motion to continue and held a waiver hearing. At the outset, Gingerich renewed his motion to continue the hearing, noting that "we are at a critical stage in these proceedings," that "[t]he decisions made by the Court today are going to be life altering," and that "we do not feel that we have had adequate time to prepare for this waiver hearing . . . ." Waiver Transcript at 3.[3]

---

[3] The record contains three volumes of transcript. The first, which we will refer to as the "Waiver

3

Gingerich noted that he had had only four business days to conduct any investigation,[4] had not received any discovery materials from the State, and that because of this short timeframe he had not interviewed witnesses, obtained exhibits, done depositions, or obtained third party discovery. He also stated that he felt it important "to have evaluations done by the Bowen Center with respect particularly to our client and in talking with them, they indicated that once an appointment is made, it might be two or three weeks until they could do the evaluation and make the report." Id. at 4. Gingerich also argued that additional time to prepare was critical because, pursuant to statute, the burden of proof had shifted from the State to Gingerich. He also argued that a continuance would not result in prejudice or detriment to the State or other parties. The court denied the motion, stating:

> [T]he reasons for the continuance go mainly to the underlying case and such discovery will be had if this Court does waive juvenile jurisdiction. Such discovery will be had if this Court does not waive juvenile jurisdiction. The full investigation is to this Court, the Court finds that it has been seven days since probable cause was filed and the petition was authorized to be filed . . . .

Id. at 7-8.

---

Transcript," is the transcript of the April 29 waiver hearing held in the juvenile court. The other two volumes, labeled as "Volume I" and "Volume II," are transcripts of various hearings held on four dates in the adult criminal court and will be referred to as labeled.

Also, at the start of the State's presentation of evidence at the waiver hearing, the prosecutor moved to incorporate "the earlier hearing a week ago," held on April 22, 2010, noting that he intended "to offer to the Court additional information, summarized information of probable cause . . . ." Waiver Transcript at 8. The appellant's brief cites to the transcript of the April 22, 2010 hearing in its statement of facts; however, the record does not contain a copy of this transcript.

[4] April 22, 2010, the date the delinquency petition was filed, was a Thursday.

4

The hearing proceeded and Karen Wenzelmaier, a neighbor of Gingerich, testified that she had been Gingerich's neighbor for eleven years, that her son frequently played with him, that she had never had problems with Gingerich, that she had never witnessed any violent acts or acts of cruelty or noticed character flaws which would make her feel uneasy, and that she felt that her children were safe being around Gingerich. She also testified that she believed he was a well-adjusted person and that the charges were out of character for him. Henry Witthoeft, who was Gingerich's maternal grandfather, testified that the two had a wonderful relationship and that he believed Gingerich was a "wholesome young man with a good attitude . . . ." Id. at 37. Dave Yoder, Gingerich's uncle, testified that he would visit with Gingerich three times a month and that he believed Gingerich was an average twelve-year-old who was courteous and respectful.

The State called Robert Babcock, the Chief Probation Officer of the Kosciusko County Probation Department responsible for both the juvenile and adult divisions. Babcock testified that he was familiar with the different dispositional alternatives in both the juvenile and adult divisions. When asked whether it was in the boys' best interests and the safety and welfare of the community that they remain in the juvenile justice system, Babcock testified:[5]

> We're limited in the juvenile justice system for a child that has been or alleged to have committed murder. If they were left in the juvenile system, a thirteen to sixteen year old that's going to be made a ward of the Department of Corrections, would only be given a determined sentence to the age of eighteen. If they are under the age of thirteen and made a ward of the Department of Corrections, then the Department of Corrections

---

[5] Babcock was specifically first asked about Lundy, who was also a defendant at the waiver hearing; however, his lengthy answer encompassed his knowledge and opinion regarding both Lundy and Gingerich.

makes the determination upon their release which could be six months or the age of eighteen. . . . There is no longer parole in the Juvenile Department of Corrections, so [Lundy] basically would be released at the age of eighteen. [Gingerich], depending on his attitude, completion of whatever programs they have for him, he could be released in six months or he could be retained until the age of eighteen also. For residential facilities, I called Herb Hobson, he's the Director of Admissions at White's Residential, just to give me an idea of whether any residential facilities, I know White's would not take a juvenile that's involved in a gun violation or a homicide, to see if there was any residential facilities in Indiana that would take a juvenile that was involved in a homicide. He could only think of one which was in the South Regional Facility in Vincennes, Indiana. . . . To my knowledge, I don't know of any residential facilities that would take a homicide delinquent. We are also limited on private placements because we have to go through what's called a probation consultant. That probation consultant works with DCS and they determine if they meet the criteria because DCS, the State of Indiana, pays for that placement.

* * * * *

For private placement, [DCS pays] and make[s] the determination for us to decide whether we are going to place any child in a private facility in the State of Indiana and we're limited to the State of Indiana. I would think that they are few and far between that would accept a delinquent that's charged with homicide. We are limited based on that charge alone on what we can do for dispositions. If we were talking about a juvenile that had a gun, a juvenile that took a van, a juvenile that ran away from home, we would have unlimited dispositional alternatives, but when you throw homicide into the formula, we really have limited dispositional alternatives.

* * * * *

Even in private facilities, their treatment plan is usually nine to twelve months. Very few are longer than twelve months. That takes a review back to the Court and obviously, the State is going to monitor their performance because they're paying for it. So we're mandated by Statute to have reviews for any child that is placed on the delinquent side in private facilities.

Id. at 60-63. When asked about the dispositional alternatives in the adult criminal system, Babcock testified: "[I]t starts at fifty-five years, ten years reduction for mitigating, ten years for aggravating, so you're looking at a range from forty-five to

6

sixty-five years. Not to say, that could be modified later on. County time, probation time, electronic monitoring could all be considered on a modification . . . ." Id. at 63-64. Babcock also testified that the Department of Correction identifies the facility that best serves treatment of defendants given the nature of their offenses.

After Babcock offered his opinion that Lundy should be waived into the adult criminal system, the prosecutor asked him his opinion regarding Gingerich, to which he responded:

> Again, if I would take the murder allegation out of there, he would be a perfect candidate for the juvenile system, but when you put in the murder allegation, and again we're limited in what we can do in the juvenile system, and the adult system in forty-five years to sixty-five years would give him the opportunity to have the treatment that's necessary for him and in the long term period versus the short term in the juvenile system.

Id. at 65-66. On cross-examination, Gingerich asked Babcock about whether the emphasis on the juvenile side was more rehabilitative than on the adult side, and Babcock said that it was. When asked why he was then recommending that Gingerich be waived into the adult criminal system, Babcock replied: "Because murder is against the person. Murder is a serious offense. Spending six months up to age eighteen, we're talking age twelve and a half to age eighteen and, six years, I'm not sure he would grasp the seriousness of the offense . . . ." Id. at 68. Babcock admitted, however, that he "would have no way of knowing that with respect to the particular individuals in this case because no evaluation has been done," and that he was offering his opinion. Id.

At the conclusion of the presentation of evidence, the court stated that it "does not find from the evidence that it would be in the best interest of [Lundy] or [Gingerich] and the safety and welfare of the community . . . to remain within the juvenile system," and it

7

issued a waiver order waiving juvenile jurisdiction of both Gingerich and Lundy to the Kosciusko Circuit Court and remanded custody of them to the Sheriff of Kosciusko County. Id. at 84. In waiving, the court noted that "[o]ur laws really do not afford an effective rehabilitation when a child is charged with an act of Murder," that "juvenile jurisdiction can continue until the child attains twenty-one years of age, however, under the juvenile law, a child cannot be placed in a juvenile correctional facility after age eighteen, leaving the Court without threat to further the child's rehabilitation," and that "commitment to a juvenile correction facility would not give sufficient time to treat and rehabilitate the child." Id. at 83.

The next day, on April 30, 2010, the State filed informations charging Gingerich and Lundy with the murder of Danner. On May 11, 2010, the State filed a motion to consolidate the cases of Gingerich and Lundy for the purposes of trial, and, on May 28, 2010, over Gingerich's objection, the Kosciusko Circuit Court ordered that the cases be consolidated. On June 2, 2010, the State filed a motion to amend and add Count II, aiding, inducing or causing murder, a felony.[6]

On June 7, 2010, Gingerich filed a motion to dismiss and request for expedited hearing and accompanying memorandum of law in which he argued that "the waiver hearing was fundamentally flawed and violates Due Process and that this Court does not have jurisdiction or that it is fatally flawed." Appellant's Appendix at 73. In the motion, Gingerich argued that the waiver hearing "in this case falls far short of a 'full investigation.'" Id. A month later, on July 7, 2010, the court held a hearing on

---

[6] Gingerich filed an objection to the State's motion to amend which the court denied on September 2, 2010.

8

Gingerich's motion. At the hearing, Gingerich reiterated that he filed a motion to continue in advance of the waiver hearing and renewed his motion at the hearing and argued that he "was only allowed four (4) business days in which to prepare for the Waiver hearing." Volume I Transcript at 4. Gingerich argued that, because jurisdiction over Gingerich in the adult criminal court "only comes through Waiver of the Juvenile Court and that the Waiver is defective . . . this Court did not acquire jurisdiction" and that therefore the juvenile court's denial of Gingerich's request for a continuance was a denial of due process. Id. at 5. Gingerich also noted that this was significant because the burden of proof at the waiver hearing was shifted to him. Gingerich argued that, under Ind. Code § 31-30-3-4, waiver is permitted only after a full investigation and hearing and that Gingerich's waiver hearing fell short in that regard. Gingerich argued that he "did not have sufficient time to conduct a full investigation, to interview witnesses, to obtain statements, [or] to conduct a psychological evaluation" and that such an evaluation "is important to the Court here as it is helpful in determining the safety, welfare of the community and the best interests of the defendant and to present witnesses regarding suitable, juvenile placement for a child charged with Murder." Id. To that end, Gingerich noted that discovery rules allow responding parties up to thirty days to reply. Gingerich also brought a witness to call who was to "give testimony of specific instances of waivers that he has been involved in;" however, the court sustained an objection by the State regarding relevance, and the witness was not allowed to testify. Id. at 10-11. The court denied Gingerich's motion.

9

On July 22, 2010, Earhart filed a motion to withdraw his appearance for Gingerich which the court granted, and attorneys William Cohen, Elizabeth Bellin, and Fred Franco filed appearances for Gingerich. On August 6, 2010, Gingerich filed a motion to reconsider the denial of his earlier motion to dismiss and attached a preliminary opinion from Dr. Stephen Ross who performed a psychological examination of Gingerich. The motion stated: "Dr. Ross is of the opinion that [Gingerich] can be retained in the juvenile court system and that [Gingerich] does not pose a safety consideration and it would be in the best interest of [Gingerich] to be remanded to the juvenile court." Appellant's Appendix at 210. The court denied Gingerich's motion. On September 2, 2010, the court heard argument on Gingerich's request for interlocutory appeal of its denial of the motion to reconsider, among other things. The court denied Gingerich's motion.

On October 5, 2010, Gingerich filed a motion to suppress statements given by Gingerich to police in Illinois and Indiana on April 21 and 22, 2010, pursuant to Ind. Code § 31-32-5-1 and his Miranda rights. On October 8, 2010, the court denied Gingerich's motion.

On November 3, 2010, the State filed a charging information for Count III, conspiracy to commit murder as a class A felony. That same day, the State and Gingerich filed a plea agreement whereby Gingerich agreed to plead guilty to Count III and the State agreed to dismiss Counts I and II. The plea agreement noted that it would be left to the court's discretion to sentence Gingerich under Count III, and that the sentencing range for class A felonies was twenty-fifty years. In addition, the agreement stated that Gingerich "understands that he has certain rights arising under the Constitution

of the United States and the State of Indiana, and further acknowledges that he understands that he has and by pleading guilty is waiving, each of the several rights by placing his initials next to each right described . . . ." Appellant's Appendix at 268. Among the rights listed that Gingerich initialed were his "right to appeal his waiver from Juvenile Court . . . to Adult Court in this case." Id. The plea agreement was signed by Gingerich, both of his parents, defense attorneys Franco and Cohen, and the prosecutor. The plea agreement also contained an addendum, signed by both of Gingerich's parents, stating that "Gingerich has had fully explained to him his rights with respect to the pending criminal case," that he "has carefully reviewed every part of this agreement and that to the best of their knowledge, Paul H. Gingerich's decision to enter into this agreement is an informed and voluntary one," that they, as Gingerich's parents, "understand their son's constitutional rights" and believe that Gingerich understands his constitutional rights, and that they agree that it is in Gingerich's best interest to enter into the plea agreement. Id. at 271. That same day, the court held a guilty plea hearing and, at the conclusion of the hearing, took Gingerich's guilty plea under advisement pending a presentence investigation report.

On January 3, 2011, Gingerich filed a sentencing memorandum arguing for the court to impose the minimum sentence; Gingerich attached to the memorandum the final report by Dr. Ross, prepared on October 26, 2010, which concluded in part:

> Paul is too young for his future to be foreclosed on if adjudicated in the adult criminal system and subsequently placed in the adult penal system. What he did was wrong and he is becoming to understand the seriousness of his offense. I would strongly recommend that this case be reconsidered for adjudication within the juvenile Court system.

11

Id. at 364.

On January 4, 2011, the court held a sentencing hearing in which it noted at the outset that it had reviewed a number of letters it had received, as well as the presentence investigation report and the report prepared by Dr. Ross. The court issued its judgment of conviction and order of commitment sentencing Gingerich to thirty years with five years suspended to probation on Count III and dismissing Counts I and II. In its order, the court stated:

> [T]he Court **STRONGLY RECOMMENDS** (and if it were in the jurisdiction and within the power of the Court to do so, it would order) that until the time the defendant reaches his 18th birthday on February 17, 2016, and as long thereafter as the law permits, and so long as he complies with the rules and requirements thereof, that he should serve that portion of his period of incarceration in the Youth Incarcerated as Adults Program of the Indiana Department of Corrections presently located in the Wabash Valley Correctional Facility and thereafter at the appropriate adult facility as determined by the Indiana Department of Corrections.

Id. at 295. On January 18, 2011, the Department of Correction placed Gingerich at the Pendleton Juvenile Facility in Pendleton, Indiana.

On January 26, 2011, Monica Foster entered her appearance on behalf of Gingerich. That same day, Gingerich, by Foster, filed a notice of appeal.[7] On November

---

[7] A period of almost nine months passed between January 26, 2011, when Gingerich filed his notice of appeal, and October 6, 2011, when the clerk's record was completed in a satisfactory manner by the trial court clerk. As noted by Gingerich in his recitation of the statement of the case, Gingerich filed four Petitions for Writs of Aid of Appellate Jurisdiction seeking to have this court compel the trial court to provide certain documents. On May, 19, 2011, this court issued an order to the clerk of the Kosciusko Circuit and Superior Courts to "within fifteen (15) days . . . provide appellant with a full and complete copy of the clerk's record" and "specifically directed [the clerk] to provide [Gingerich] with copies of any and all of the documents listed in [his] motion for a writ in aid of appellate jurisdiction." On July 18, 2011, the trial court issued an order requesting clarification and authority for motion to correct clerk's record stating that it, "on July 14, 2011, received Motion to Correct Clerk's Record filed by" Gingerich, that it "desires nothing more than to comply with the directives of the Indiana Court of Appeals and the request of counsel," and requested that Gingerich produce authority "to the including of matters which were submitted to the Court as a part of the sentencing process and for inclusion in the confidential pre-

18, 2011, Marsha Levick of the Juvenile Law Center in Philadelphia, Pennsylvania, with Joel Schumm serving as local counsel, filed an amicus brief ("Amicus JLC"). That same day, Robert Hill and Victoria Bailey of the Marion County Public Defender Agency also filed an amicus brief ("Amicus MCPDA"). Finally, on December 9, 2011, Erin Davies of the Children's Law Center in Covington, Kentucky, with Michael Jenuwine of the Notre Dame Legal Aid Clinic serving as local counsel, filed an amicus brief ("Amicus CLC").

## ISSUE

The dispositive issue is whether the juvenile court abused its discretion when it denied Gingerich's request for a continuance of the waiver hearing. Generally, "denials of motions for continuance not based on statutory grounds are committed to the sound discretion of the trial court . . . ." Vance v. State, 640 N.E.2d 51, 55 (Ind. 1994). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court or where the record demonstrates prejudice to the defendant from a denial of the continuance. Tharpe v. State, 955 N.E.2d 836, 843

---

sentence investigation report being properly included in the Clerks' record." Appellant's Appendix at 380. On August 22, 2011, this court issued an order on Gingerich's Third Request for Writ in Aid of Appellate Jurisdiction as follows:

> 1. Appellant's third request for a writ in aid of appellate jurisdiction is granted.
>
> 2. Within fifteen (15) days of the date of this order, the clerk of the Kosciusko Circuit Court is ordered to issue an amended notice of completion of clerk's record . . . and file with the clerk of this court. This amended notice of completion of clerk's record must specifically certify and attest that the clerk's record now contains everything received or considered by the trial court . . . .
>
> * * * * *
>
> 4. If the Kosciusko Circuit and Superior Courts Clerk is unable to fully comply with this order, he or she shall file a notice with the clerk of this court explaining why he or she is unable to comply with this order within fifteen (15) days of the date of this order.

August 22, 2011 Order.

13

(Ind. Ct. App. 2011), <u>trans.</u> <u>denied</u>. Continuances to allow additional time for preparation are generally disfavored in criminal cases. <u>Vance</u>, 640 N.E.2d at 55 (citing <u>Baxter v. State</u>, 522 N.E.2d 362, 366 (Ind. 1988), <u>reh'g</u> <u>denied</u>); <u>Tharpe</u>, 955 N.E.2d at 843.

## DISCUSSION AND ARGUMENTS

Ind. Code § 31-30-3-4 governs waiver into adult court for acts which would be murder and provides:

> Upon motion of the prosecuting attorney and after full investigation and hearing, the juvenile court shall waive jurisdiction if it finds that:
>
> > (1)     the child is charged with an act that would be murder if committed by an adult;
> >
> > (2)     there is probable cause to believe that the child has committed the act; and
> >
> > (3)     the child was at least ten (10) years of age when the act charged was allegedly committed;
>
> unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.

As noted by Gingerich, the probable cause hearing took place the day after he was detained by police in Illinois, the waiver hearing was set for five business days (or one week) after the probable cause hearing, and Gingerich's counsel requested a continuance in order to "properly investigate the case against waiver," which the court denied. Appellant's Brief at 32.

Before turning to the merits of Gingerich's claim, however, we first address the State's argument raised on cross-appeal that Gingerich's appeal should be dismissed because he waived his right to appeal in his plea agreement and by pleading guilty.

14

Initially, we note that on January 9, 2012, the State filed a motion to dismiss the appeal stating that Gingerich "explicitly waived his right to appeal as set forth in his plea agreement." January 9, 2012 Motion to Dismiss Appeal. On January 10, 2012, Gingerich filed a response noting that, "[i]n pretrial motions, [he] informed this Court of the purported appellate waiver and of his intent to argue it is null, void and unenforceable" and that his brief contains "numerous arguments as to why the purported waiver is unenforceable" which are "interspersed throughout the Brief and also contained in Argument 5" and which include a challenge to whether the adult criminal court had subject matter jurisdiction to take Gingerich's guilty plea. January 10, 2012 Response to State's Motion to Dismiss Appeal. On February 17, 2012, the motions panel denied the State's motion and ordered the State to file its brief within thirty days of the order.

On appeal, the State argues that Gingerich's claims of error are not jurisdictional "but are merely the kinds of legal and procedural error that a defendant routinely forsakes by pleading guilty" and that Gingerich "relinquished his claims of pretrial error and expressly waived appeal in exchange for substantial benefits, and his decision should be respected and enforced." Appellee's Brief at 33. The State notes that Gingerich received a substantial benefit by pleading guilty pursuant to the plea agreement because he was allowed to plead guilty to a lesser charge of conspiracy to commit murder and faced a far reduced potential sentencing range. The State asserts that "[o]nce a court has acquired subject matter and personal jurisdiction, challenges to its subsequent rulings and judgment are questions incident to the *exercise* of jurisdiction rather than to the *existence* of jurisdiction." Id. at 14 (quoting Buckalew v. Buckalew, 754 N.E.2d 896, 898 (Ind.

15

2001)). The State argues that "characterizing other sorts of procedural defects as 'jurisdictional' misapprehends the concepts." Id. at 15 (quoting K.S. v. State, 849 N.E.2d 538, 542 (Ind. 2006)). The State asserts that here, the juvenile court had exclusive original subject matter jurisdiction over Gingerich, that it possessed the statutory authority to waive subject matter jurisdiction to the adult court pursuant to Ind. Code § 31-30-3-4, and that, indeed, the statute "creates a presumption in favor of waiving juvenile jurisdiction to the adult court" where the court "finds probable cause exists to believe that a child over the age of ten has committed an act that would be murder if committed by an adult . . . ." Id. at 15-16. In so arguing, the State acknowledges that it has previously taken a contrary position regarding whether waiver proceedings were jurisdictional in Roberson v. State, 900 N.E.2d 446 (Ind. Ct. App. 2009), clarified on reh'g, 903 N.E.2d 1009 (2009) ("Roberson Rehearing"), trans. denied, but it argues that this previous position "cannot hold as it is contrary to the Indiana Supreme Court's holding in *K.S.*" Id. at 17.

Gingerich argues that his guilty plea and its provisions have been rendered a nullity because errors at the waiver hearing created a jurisdictional deficiency in the adult criminal court and were not merely procedural, noting that Ind. Code § 31-30-1-1 vests "exclusive original jurisdiction" in the juvenile court over a child who is alleged to, before becoming eighteen years of age, commit a delinquent act, and, for persons charged with an act that would be murder if committed by an adult, that exclusive jurisdiction may be waived pursuant to Ind. Code § 31-30-3-4. Gingerich asserts that the State's claim that any error was merely procedural is contrary to Indiana case law, specifically

16

Roberson, and he underscores that the State's position requires this court to overlook the fact that it was the State who sought the rule adopted in that case. Gingerich argues that the State's argument that Roberson cannot be squared with K.S. is misplaced because K.S. predated Roberson by three years and was discussed by the State in its briefing on that case supporting the position adopted by this court.

Regarding the Indiana Supreme Court's opinion in K.S., Gingerich argues that it "does not render the appellate courts impotent to correct gross injustices involving *transfer* of juvenile jurisdiction," noting that it instead "involved juvenile jurisdiction only . . . ." Appellant's Reply Brief at 2 (emphasis added). Gingerich maintains that "[h]ere, as in K.S., exclusive jurisdiction over [his] case resided with the juvenile court," but "[t]hat is where the similarity with K.S. ends" because "[t]here was no transfer of jurisdiction in K.S. and thus, the Court never addressed the question of subject matter jurisdiction attendant to constitutional irregularities in the juvenile waiver process." Id. at 3-4 (emphasis omitted). Gingerich argues that "[j]urisdiction vests in the criminal court only if the case is properly waived," that here "transfer was unlawful because the hearing that produced it failed to comport with due process," and that "[f]ailure to follow proper constitutionally imposed procedures in the transfer process results in a jurisdictional defect in the criminal court because it is only through that process that it acquires jurisdiction." Id. at 4. Gingerich contends that K.S. is "wholly supportive" of his position, noting that "[a]lthough a guilty plea generally extinguishes the right to appellate review of pretrial rulings, it does not and cannot prevent review of deficiencies of subject

17

matter jurisdiction. Nor can [his] purported waiver of review in the plea create jurisdiction that did not exist." Id. at 5.

In Roberson, this court addressed the issues of whether the juvenile court abused its discretion in waiving the defendant into adult court and whether his sentence was inappropriate and, *sua sponte*, held that "[i]t is well-settled that a defendant may not question pre-trial proceedings following a guilty plea" and thus "Roberson gave up the right to bring any claim regarding his waiver into adult court when he pled guilty." 900 N.E.2d at 448. The court went on to address the merits and found the waiver nevertheless proper. Id. at 448-452.

The State petitioned the court for rehearing, noting in its petition that "[w]hile the State certainly could benefit from the application of the Court's ruling in other cases, [it] has an ethical duty to disclose legal authority contrary to the Court's opinion." Appellant's Addendum to Reply at 4.[8] The State noted that K.S. holds that trial courts possess two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction, that "[s]ubject matter jurisdiction of circuit courts is a creature of statute," and that "[a] juvenile court's decision to waive a juvenile into adult court is an issue of subject matter jurisdiction." Id. at 5 (citing State ex rel. Camden v. Gibson Circuit Court, 640 N.E.2d 696, 696-697 (Ind. 1994)); see also K.S., 849 N.E.2d at 540. The State also noted that a motion to dismiss based upon lack of jurisdiction over the subject matter may be made at any time and can never be waived. Id. (citing Ind. Criminal Rule 3; Ind. Code § 35-34-1-4(b)). The State asserted that permitting a defendant to raise this challenge following a

---

[8] Gingerich included the State's petition for rehearing in Roberson in an addendum filed with his reply brief.

18

guilty plea is consistent with Ind. Code § 35-35-1-4 which governs the withdrawal of guilty pleas including when "the plea and judgment of conviction are void," and noted that judgments made when the court lacks subject matter jurisdiction are void, and that courts at all levels are required to consider the issue *sua sponte*. Id. at 6. Finally, the State also noted that the court's conclusion was "inconsistent with the approach established by the Indiana Supreme Court regarding juvenile court waivers" in State ex rel. Snellgrove v. Porter Circuit and Juvenile Courts, 270 Ind. 431, 433, 386 N.E.2d 680, 681 (1979), in which the Court held "that an appeal from a waiver order, valid upon its face, must abate pending a final determination of the criminal prosecution authorized by the waiver."

This court granted the State's petition for rehearing "for the limited purpose of clarifying that one may challenge a waiver into adult court at any time, as it involves a question of subject matter jurisdiction." Roberson Rehearing, 903 N.E.2d at 1009 (citing Camden, 640 N.E.2d at 696-697 (concluding that the juvenile court has exclusive original subject matter jurisdiction over juvenile case until waived into adult court pursuant to statute)). In so holding, the court noted that "[w]hen courts lack subject matter jurisdiction, their actions are void *ab initio* and may be attacked at any time." Id. (quoting Kondamuri v. Kondamuri, 799 N.E.2d 1153, 1156 (Ind. Ct. App. 2003), trans. denied).

To the extent that the State asserts that Roberson is not good law because it conflicts with the Indiana Supreme Court's holding in K.S., we observe that in K.S. the Indiana Supreme Court held that "Indiana trial courts possess two kinds of 'jurisdiction'"

19

which are subject matter jurisdiction and personal jurisdiction, that "[w]here these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack," and that "[o]ther phrases recently common to Indiana practice, like 'jurisdiction over a particular case,' confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations." 849 N.E.2d at 540. The Court observed that in that case there was "no question that the juvenile court had subject matter and personal jurisdiction," noting that "'[t]he question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs,'" that "[a] juvenile court indeed has exclusive jurisdiction over a proceeding alleging a child to be a delinquent child," and that "[a]s for personal jurisdiction, K.S. was a Marion County resident who submitted himself to the authority of the court." Id. at 542 (quoting Troxel v. Troxel, 737 N.E.2d 745, 749 (Ind. 2000), reh'g denied; and citing Ind. Code § 31-30-1-1). We do not find that any statements in K.S. conflict with our holding in the Roberson Rehearing. See also Seay v. State, 167 Ind. App. 22, 25, 39-40, 337 N.E.2d 489, 491, 499 (1975) (reversing assault conviction in adult criminal court of seventeen-year-old defendant because "[a] proper waiver was the only way the Circuit Court could have acquired jurisdiction" and "[l]acking a valid transfer of juvenile jurisdiction, the [adult] court was without power to try and convict" the defendant).

Having determined that Gingerich has not waived his ability to challenge the denial by the juvenile court of his request for a continuance, we turn to the arguments of

20

the parties, as well as the arguments of Amicus MCPDA and Amicus CLC, which aided in our analysis.

A.      Arguments of Gingerich

Gingerich argues that "the court misapprehended the basis of the requested continuance," noting that in denying the request "the court stated: 'the reasons for the continuance go mainly to the underlying case and such discovery will be had if this Court does waive juvenile jurisdiction.'"  Appellant's Brief at 39.  Gingerich argues that, instead, his request was in order to have "a fair chance to provide due process," noting that he highlighted for the court that he was unable to conduct a mental health evaluation and had not received potential evidence to present including witness statements, client statements, autopsy reports, coroner reports, ballistic reports, or forensic reports.  Id. at 33.  Gingerich argues that the State has the initial burden of proving by a preponderance of the evidence the requirements of Ind. Code § 31-30-3-4(1)-(3), and that if sustained, the burden shifts to the juvenile to demonstrate that waiver would not be in the best interests of the child and the safety and welfare of the community.  Id. at 38.  Thus, as argued by Gingerich, defense counsel at a waiver hearing has a twofold duty to both contest evidence of criminality and "provide evidence demonstrating that the child and society's interests are better served by the child remaining in the juvenile system."  Id. Gingerich argues that it is "extraordinarily difficult" to contest evidence of criminality when it "has yet to be provided" and is "impossible to produce compelling evidence relevant to the second inquiry with 5 days notice."  Id.

Gingerich contends that the court's denial of the continuance is made more troublesome because this question "has largely been decided" by the Indiana Supreme Court in <u>Vance</u>, discussed below. <u>Id.</u> at 38. Gingerich argues that the trial court here did not comply with <u>Vance</u> because "there was no preliminary investigation, no mental health evaluation even though the mere sight of [him] ought to have been cause for pause" and thus "[t]here simply was no conscientious determination of waiver. The proceedings here bear all the hallmarks of a perfunctory proceeding and not the careful proceeding our constitutions demand." <u>Id.</u> at 39.

Gingerich argues that specifically, the court's denial of a continuance resulted in "two discrete areas of harm" to him. <u>Id.</u> at 33. First, Gingerich says that he was not able to have a mental health evaluation conducted and thus could not obtain professional testimony to demonstrate that he was incompetent to stand trial or enter a guilty plea, noting that his counsel requested both orally and by written submission to the court that a mental health evaluation be performed in advance of the waiver hearing. Gingerich argues that "[a] mental health evaluation for a 12-year old charged with murder seems an essential and obvious prerequisite" prior to a waiver hearing. <u>Id.</u> at 34. Gingerich notes that he advised the court it would take 2-3 weeks for the Bowen Center to evaluate him and report back to the court, and states that a continuance would have allowed him to demonstrate this to the juvenile court at the appropriate time.

Second, Gingerich argues that in ordering waiver, the court relied upon false testimony by Chief Probation Officer Ronald Babcock, and that had the continuance been granted his counsel would have been prepared to refute these statements through cross-

22

examination. Gingerich cites to the court's statements made in waiving jurisdiction as follows:

> [J]uvenile jurisdiction can continue until the child attains twenty-one years of age, however, under the juvenile law, a child cannot be placed in a juvenile correctional facility after age eighteen, leaving the Court without threat to further the child's rehabilitation. [C]ommitment to a juvenile correction facility would not give sufficient time to treat and rehabilitate the child.

Id. at 35 (quoting Waiver Transcript at 83). Gingerich argues that these statements echoed Babcock's false testimony. Specifically, Gingerich cites the following statements as false and cites to relevant authority as follows: (1) Babcock "testified that the [DOC] could hold [Gingerich] only until his 18th birthday" when in fact Ind. Code § 11-13-6-4 allows the DOC to hold juvenile offenders "for any amount of time it deems appropriate until he turns 21"; (2) Babcock "testified that there is no longer parole for juvenile offenders," but Ind. Code § 11-13-6 specifically provides for parole and discharge for delinquent offenders; and (3) Babcock "averred that children who are not waived are released with no supervision at the age of 18" when actually, pursuant to Ind. Code § 31-30-2-2, "[t]en days before the child's release the IDOC is statutorily *required* to inform the trial court" of an impending release which allows the court "to reassert jurisdiction and place the child on probation until [his] 21st birthday." Id. at 36 (citing Ind. Code § 31-30-2-3; RJG v. State, 902 N.E.2d 804 (Ind. 2009)).

Gingerich also notes that Babcock's statements that he was unaware of any residential facilities which would accept Gingerich is refuted by the brief of Amicus MCPDA, discussed below, which lists "at least 17 locked and secure private facilities in Indiana that would accept a 12 year old charged with murder" and also does not account

23

for "the state run facilities, including the Pendleton Juvenile Facility where [Gingerich] is currently housed . . . ." Id. Gingerich maintains that "[h]ad counsel been given more time, they could have presented the truthful testimony of the folks who actually run the institutions" as is routine in Marion County. Id. at 37. Gingerich argues that "[w]hen the prosecutor presents testimony that leaves a false or misleading impression in the mind of the fact finder, due process is violated." Id. (citing Giglio v. United States, 405 U.S. 150, 153, 92 S. Ct. 763, 766 (1972) (holding that it is "incompatible with 'rudimentary demands of justice' for the State to allow false evidence to go uncorrected when it appears," even if it did not solicit the false evidence, and that in such cases due process requirements require a new trial) (quoting Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959))).

B.    Arguments of Amicus MCPDA

Amicus MCPDA begins by emphasizing that, pursuant to Ind. Code § 31-30-3-4, "a full investigation is a necessary and statutorily-required prerequisite to waiver" and thus the full investigation requirement in the statute is "a state-created liberty interest." Amicus MCPDA's Brief at 2. Thus, "a juvenile has a liberty interest in being waived to adult court if and only if the strictures of the waiver statute are satisfied – including the requirement of/right to a full investigation," and that "[o]nce created, the State may not, consistent with the due process requirements of the Fourteenth Amendment, arbitrarily deny a juvenile said liberty interest." Id.

Amicus MCPDA states that juveniles in Marion County who face being waived into adult court "are typically afforded at least a minimum of three months to investigate

24

and prepare" which "is critical because of the nature and scope of what needs to be done . . . ." Id. at 3. Amicus MCPDA notes that it collects a multitude of records, including school and medical records, which "are critical to the preparation of a waiver case because [they] will point out avenues for additional investigation," and that the procurement of such records "typically takes at least 30 days . . . ." Id. at 3-4. Amicus MCPDA states that a full investigation requires interviewing persons including "immediate and extended family, teachers, counselors, clergy, etc." which is "necessary for compiling the juvenile's social history," and that such interviews, coupled with the compiled documents, "will direct the juvenile's counsel to further areas that need investigation and what experts need to be consulted." Id. at 4. Amicus MCPDA notes that in Marion County all juveniles facing waiver for murder will be evaluated by an expert of forensic psychology or forensic psychiatry, and additional experts often used include those "who can speak regarding the negative impact of waiver on the juvenile and community at large" and those "who can speak regarding brain development in juveniles." Id.

Finally, Amicus MCPDA notes that as part of its preparation for a murder waiver case it "would investigate possible dispositional alternatives that would accept placement of and be able to provide treatment for a juvenile found true of murder" by "trying to get the juvenile pre-approved for placement" at one of a number of non-Department of Correction facilities "that will take juveniles as young as 12 years old who have been found true of murder – provided the facilities' other clinical admission requirements are met," and it lists seventeen potential facilities. Id. at 5. Amicus MCPDA notes that at the

waiver hearing it would introduce evidence of facilities that had pre-approved the juvenile's placement and the secure nature of the facilities, as well as the programs and services available for juveniles sent to the Pendleton Juvenile facility of the DOC, and that such evidence "is a crucial part of the process because in order to make a well-informed decision about the appropriateness of waiver, the trial court must know that there are secure facilities capable of protecting the community while at the same time providing the necessary and proper care and treatment . . . ." Id. at 8.

C.     Arguments of Amicus CLC

Amicus CLC argues that "the juvenile court has an obligation to allow a youth facing waiver to adult court to conduct and present evidence from a full investigation to the court," noting that the Indiana Supreme Court has "interpreted the need for a full investigation in *Vance v. State*, where it stated that a juvenile's right to basic due process and fair treatment in waiver hearings 'include[s] the right to present evidence . . . of any circumstances . . . entitled to him [or her].'"  Amicus CLC's Brief at 10 (quoting Vance, 640 N.E.2d at 55).  Amicus CLC notes that the Institute of Judicial Administration and American Bar Association ("IJA-ABA") suggests the use of expert opinions in juvenile waiver hearings, particularly while assessing the effectiveness of dispositional alternatives that would be available to the youth if retained in the juvenile justice system. Amicus CLC also cites guidelines issued by the National Council of Juvenile and Family Court Judges ("NCJFCJ") which "encourages the juvenile court to have three evaluations conducted in any waiver hearing" including a social evaluation examining the "youth's family situation, educational history, current and prior offenses, involvement in pro-

26

social activities, and adjustment to detention as well as any other individuals of influence in the youth's life and any services with which the youth has been involved," a physical examination covering "the youth's current physical condition including maturity issues, developmental delays, and any other medical needs," and a "forensic evaluation, which is critical as it examines not only the youth's mental state, but also whether the youth is competent to stand trial." Id. at 11.

Amicus CLC argues that conducting a full examination in conformance with the NCJFCJ standards requires that the parties have sufficient time to gather and prepare evidence for the court and that, although generally continuances for additional preparation time are disfavored in Indiana, "Indiana case law specifically supports giving counsel in wavier [sic] cases additional time to afford a youth his or her full due process rights before a waiver decision is made." Id. (citing Vance, 640 N.E.2d at 54-56); Elmore v. State, 657 N.E.2d 1216, 1218 (Ind. 1995) (counsel was appointed less than a week before trial and a continuance was granted, postponing the trial for a month)). Amicus CLC also acknowledges that although the IJA-ABA Standards and NCJFCJ Guidelines recommend that the waiver hearing be conducted within ten business days of the probable cause hearing, the purpose of this "limitation is solely meant to avoid unnecessary delay in gathering information . . . particularly if the youth is incarcerated," and the timeframe can and should be extended when the court is taking concrete steps toward gathering information. Id. at 12. Amicus CLC also argues that the IJA-ABA Standards and NCJFCJ Guidelines require a full hearing to be conducted that comports with due process requirements including having representation by counsel, the taking of

27

testimony under oath, the right to call and cross-examine witnesses, the right to see evidence presented against the youth, and the right to present evidence on behalf of the youth, that at least three days prior to the hearing the final evaluation reports be provided to the parties to ensure adequate review and preparation time, and that the court should also have access to these reports prior to the hearing.

D.      Arguments of the State

The State maintains that Gingerich has not shown that he was prejudiced by the denial of his continuance. The State argues that "[u]nlike in *Vance*, defense counsel in this case had a full week after the probable cause hearing was held to prepare for the waiver hearing." Appellee's Brief at 28. The State argues that "[b]y the time he pled guilty, [Gingerich] had many months and ample opportunity to summon relevant evidence, investigate relevant legal and factual issues, and consider the completed psychiatric evaluation" and, armed with this information, still decided to plead guilty and to waive his appeal rights in the plea agreement. Id. at 29. The State refutes Gingerich's claim that additional time would have permitted him to demonstrate that he was not competent by suggesting, without citation to authority, that "[h]is competence does not bear upon his burden under the waiver statute." Id. The State also contends that by pleading guilty Gingerich "tacitly admit[ted] that he could not have met his statutory burden" and thus has not shown that he was harmed by the denied continuance. Id. Finally, the State argues that any error was harmless because "[t]he completed psychological evaluation did not show that [Gingerich] suffered from any intellectual dysfunction or psychological conditions that would particularly benefit from treatment in

28

the juvenile system" and the juvenile court found that the juvenile system was simply not adequately equipped to deal with this case. Id. at 30. In his reply brief, Gingerich argues that the State's assertion that competence does not bear on the waiver statute and thus is not a source of prejudice is not true because, as recognized by the United States Supreme Court in Roper v. Simmons, 543 U.S. 551, 569-570, 125 S. Ct. 1183, 1195 (2005), the brains of juveniles are not fully developed and "this is critical when assessing the best interest of society and the child." Appellant's Reply Brief at 14.

ANALYSIS

As noted above, the crux of the arguments of Gingerich and the amici are essentially that the juvenile court's denial of the continuance prohibited Gingerich from receiving a full and fair opportunity to present his claims, i.e., a denial of due process.[9] "The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action which deprives a person of life, liberty, or property without the 'process' or 'course of law' that is due, that is, a fair proceeding." Pigg v. State, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010), trans. denied. The same analysis is applicable to both federal and state claims. Ind. High Sch. Athletic

_____

[9] We note that the United States Supreme Court has issued a number of opinions in recent years recognizing differences between juvenile and adult criminal offenders which underscore the importance of protecting the due process rights of juveniles at waiver hearings. See Roper, 543 U.S. at 569-570, 125 S. Ct. at 1195-1196 (holding that the Eighth Amendment's ban on cruel and unusual punishment prohibited the death penalty for persons under eighteen based upon developmental immaturity, vulnerability or susceptibility to negative influences and outside pressures including peer pressure, and that a juvenile's character is not as well formed as that of an adult and noting that "a greater possibility exists that a minor's character deficiencies will be reformed"); Graham v. Florida, 130 S. Ct. 2011 (2010) (holding that a sentence of life without parole imposed on a juvenile in a non-homicide case violated the Eighth Amendment based upon its statements in Roper); J.D.B. v. North Carolina, 131 S. Ct. 2394, 2406 (2011) (holding that a juvenile's age is relevant in determining whether a the juvenile is "in custody" for Miranda analysis if the juvenile's age was known to the officer at the time of questioning or if the juvenile's age was objectively apparent to a reasonable officer).

Assoc. v. Carlberg, 694 N.E.2d 222, 241 (Ind. 1997), reh'g denied. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Pigg, 929 N.E.2d at 803 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487 (1985)). "Once it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Id. (quoting Loudermill, 470 U.S. at 541, 105 S. Ct. 1487 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972))). Also, predicate to any analysis of whether the process provided was fair is a determination that the claimant had a protectable life, liberty, or property interest at stake. Carlberg, 694 N.E.2d at 241 (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571, 92 S. Ct. 2701 (1972)). Finally, we observe that "[d]ue process which comports with the Fourteenth Amendment in civil proceedings is a flexible concept which entitles litigants to a full and fair opportunity to litigate their claim." Pigg, 929 N.E.2d at 803 (citing Kremer v. Chemical Const. Corp., 456 U.S. 461, 480, 102 S. Ct. 1883 (1982), reh'g denied).

We note that Ind. Code § 31-30-3-4 implicates valid liberty interests held by Gingerich. As he notes, Ind. Code § 31-30-1-1 vests "exclusive original jurisdiction" in the juvenile court over a child who is alleged to, before becoming eighteen years of age, commit a delinquent act. Also, Ind. Code § 31-30-3-4 provides for a "full investigation and hearing" prior to juvenile jurisdiction being waived. Thus, at the outset of the filing of the delinquency petition Gingerich enjoyed the panoply of protections associated with being tried in the juvenile system, and he was entitled to a full investigation and hearing

30

prior to the court ordering waiver. Accordingly, Gingerich's liberty was at stake when the State moved to waive Gingerich into adult court. See Kent v. United States, 383 U.S. 541, 556-557, 86 S. Ct. 1045, 1055 (1966) (noting that "waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile" and that in the juvenile system a child "is protected against consequences of adult conviction such as the loss of civil rights, the use of adjudication against him in subsequent proceedings, and disqualification for public employment," and that in that particular case the difference in the potential penalty was "between five years' confinement and a death sentence").

In Vance, the Indiana Supreme Court addressed the issue of whether the defendant's "waiver to adult court was legally effective." 640 N.E.2d at 53. Defendant Vance was convicted of murdering his mother, for which he received a sixty-year sentence, as well as other charges which were filed separately. Id. at 53, 56. On August 9, 1991, at the time the murder was committed, Vance was fifteen years old. Id. at 54. The juvenile court held two waiver hearings: first, in August 1991 when the State charged Vance with murder; and second, in May 1992 when the additional charges were filed. Id. On appeal, Vance argued that reversible error occurred at each of the hearings. Id.

The Court first discussed the waiver hearing on the murder charge, noting that Vance argued that he was denied due process when the juvenile court refused to grant his request for a continuance so that his attorney could gather evidence to show that waiver was not appropriate. Id. at 54-55. "Thus, he reasons, the waiver was improper, the adult

31

court never obtained jurisdiction over him and, as a result, his conviction for murder is a nullity." Id. at 54. The record reflected that the public defender was appointed on Saturday, August 10, the first court appearance was on Monday, August 12, and that same day the State requested that Vance be waived to adult court. Id. Defense counsel requested a continuance in order to prepare for the hearing which the court denied, noting that "due to the mandatory language of the statute, the Court overrules the motion for continuance." Id. at 55. The court waived jurisdiction. Id.

The Court began its analysis stating: "It is now well-established that juveniles are entitled to basic requirements of due process and fair treatment during waiver hearings, including 'the right to present evidence, if any be available to him, of any circumstances that would entitle[] him to the benefits that might be afforded to him by the provisions of the Juvenile Act.'" Id. (quoting Summers v. State, 248 Ind. 551, 560, 230 N.E.2d 320, 325 (Ind. 1967) (following Kent, 383 U.S. at 554-555, 546 86 S. Ct. at 1054)). The Court noted that the juvenile court was mistaken in deeming that waiver was "mandatory," noting instead that "there is merely a presumption that jurisdiction will be waived," and that "[t]he presumption operates in favor of waiver 'unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.'" Id. Thus, the Court concluded that "it was possible that had Vance been granted a continuance, he might have gathered evidence to overcome the presumption of waiver." Id.

The Court also highlighted the statutory requirement that "the juvenile court may not waive jurisdiction until 'after full investigation and hearing,'" and noted:

> Summers instructs that the record "*should be sufficient* to demonstrate unequivocally that the strict statutory requirement of a full investigation and hearing has been met and that a conscientious determination of the question of waiver has been made." 248 Ind. at 559-60, 230 N.E.2d at 325. *In short, the investigation and hearing is not to be a perfunctory proceeding, but is one intended to protect the full panoply of rights provided by our state and federal constitutions*.

Id. (emphases added).

The Court also acknowledged an argument by the State that denials of motions for continuance not based on statutory grounds are committed to the sound discretion of the trial court, and that generally continuances allowing for preparation are not favored, but noted that the circumstances, including that counsel had only two days to prepare and that counsel requested a continuance, dictate that a continuance was "required in order that the statutory full investigation could take place and Vance could marshall evidence as to why he should remain in the juvenile justice system." Id. Having said this, the Court also noted that its inquiry was not over, that "[n]ot all trial error is reversible error, and that "[f]or the denial of a continuance to be reversible error, the defendant must demonstrate the prejudicial abuse of discretion by a *specific showing* that additional time would have aided the defense."[10] Id. (emphasis added).

Thus, the Indiana Supreme Court in Vance held that juvenile waiver hearings are not "perfunctory proceedings" and that due process requires that child defendants at

---

[10] The Court then noted that, under the circumstances, in which a second waiver hearing was held in May 1992 where the defendant "had sufficient time to gather such information as might persuade the juvenile court that jurisdiction should not be waived on the other charges" and "had a full and fair opportunity to present evidence to that effect at the second hearing," because the Court was concluding in subsequent analysis that waiver was not inappropriate on the other charges, it was "persuaded that he was not prejudiced by his lack of time to prepare for the hearing on the murder charge and, therefore, the denial of the continuance was harmless error." Vance, 640 N.E.2d at 56.

33

waiver proceedings be afforded sufficient time to prepare a defense addressing both evidence of criminality as well as whether waiver would not be in the best interests of the child and the safety and welfare of the community. Under these circumstances, in which Gingerich's counsel had four business days to prepare, and he repeatedly moved for a continuance both on April 27, 2010 and at the outset of the hearing itself, we conclude that Gingerich's counsel did not have sufficient time to prepare and that he was prejudiced. In so holding, we note that Gingerich on appeal identified specific instances in which his lack of time to prepare prejudiced him at the waiver hearing. First, Gingerich identifies the failure to investigate whether Gingerich was competent, due to developmental immaturity, to stand trial or enter a guilty plea. Gingerich in his brief points to Dr. Ross's report which was completed on October 26, 2010 (about a week before Gingerich pled guilty) and which noted concerns about Gingerich's competence, noting that Gingerich believed it was the judge's responsibility to find him guilty, he displayed an inability to articulate fully what his counsels' role was in the case, he did not understand why he should not speak with the prosecutor without his attorney, he displayed an inability to convey an understanding of the concept of plea bargaining, he did not understand many of the legal strategies his counsel proposed, and he was unable to understand many of the words being used by his counsel. Second, Gingerich notes that his trial counsel was not adequately prepared to refute the testimony of Officer Babcock, specifically, Officer Babcock's testimony that he was unaware of a facility which would accept Gingerich. As noted by Amicus MCPDA, it is common practice to attempt to find a placement in a juvenile facility prior to the waiver hearing, but that the time afforded

34

Gingerich's counsel precluded such an investigation. Accordingly, we find that the juvenile court abused its discretion when it denied Gingerich's request for a continuance.[11] Cf. G.N. v. State, 833 N.E.2d 1071, 1075 (Ind. Ct. App. 2005) (holding that the juvenile court did not abuse its discretion in denying the motion for a continuance in which "trial counsel had more than one month to prepare for trial") (citing Elmore, 657 N.E.2d 1216 (holding that trial court was within its discretion to deny request for a continuance in which previous counsel withdrew representation, trial counsel entered his initial appearance less than a week before trial was to begin, the court granted a continuance postponing trial for one month and denied a subsequent request for a continuance)); see also Ind. Code § 31-10-2-1 (noting that "[i]t is the policy of this state and the purpose of this title to . . . (5) ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation . . . .").[12]

---

[11] We observe that the juvenile court in waiving jurisdiction demonstrated a lack of appreciation for Ind. Code § 31-30-3-4's "full investigation" dictate when it stated in denying Gingerich's request for a continuance that "the reasons for the continuance go mainly to the underlying case and such discovery will be had if this Court does waive juvenile jurisdiction. Such discovery will be had if this Court does not waive juvenile jurisdiction." Waiver Transcript at 7-8. Moreover, the court appeared to suggest in waiving jurisdiction that the juvenile court system was not a viable option for persons such as Gingerich when it stated that "[o]ur laws really do not afford an effective rehabilitation when a child is charged with an act of Murder," that "juvenile jurisdiction can continue until the child attains twenty-one years of age, however, under the juvenile law, a child cannot be placed in a juvenile correctional facility after age eighteen, leaving the Court without threat to further the child's rehabilitation," and that "commitment to a juvenile correction facility would not give sufficient time to treat and rehabilitate the child." Id. at 83. We note that such a view is contrary to the language of Ind. Code § 31-30-3-4 which allows for the juvenile justice system to rehabilitate juveniles accused of committing an act of murder if the juvenile defendant demonstrates that "it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system."

[12] To the extent that the State suggests that Gingerich decided to plead guilty after his counsel had an opportunity to "summon relevant evidence, investigate relevant legal and factual issues, and consider the completed psychiatric evaluation" (i.e., the full investigation Gingerich claims should have occurred prior to the waiver hearing), therefore demonstrating that he was not prejudiced at the waiver stage, we

CONCLUSION

For the foregoing reasons, we reverse Gingerich's conviction for conspiracy to commit murder as a class A felony, and we remand for proceedings consistent with this opinion.

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.

---

again note that Ind. Code § 31-30-3-4's dictate that waiver be granted unless the juvenile shows that it is in the "best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system" is not determined by the guilt or innocence of the juvenile alone but instead involves the examination of other factors as discussed above.