## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 03 2018, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.S.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

July 3, 2018

Court of Appeals Case No.
17A-JV-3037

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

The Honorable Deborah A. Domine, Magistrate

Trial Court Cause No.
20C01-1702-JD-48

**Barteau, Senior Judge**

# Statement of the Case

A.S. appeals the juvenile court's order determining that he violated the terms of probation and placing him in the custody of the Indiana Department of Correction. We affirm.

# Issues

A.S. raises three claims, which we restate as:

I. Whether A.S. received ineffective assistance of counsel.

II. Whether the juvenile court deprived A.S. of his right to due process.

III. Whether the juvenile court abused its discretion by placing A.S. in the custody of the Department of Correction.

# Facts and Procedural History

On February 2, 2017, the State filed a delinquency petition against A.S. The State alleged A.S. was a delinquent child for committing acts at the age of fifteen that, if committed by an adult, would have amounted to operating a vehicle while intoxicated, a Class A misdemeanor; operating a vehicle while never having been licensed, a Class C misdemeanor; and failure to stop after an accident, a Class B misdemeanor. The State claimed A.S. drove while drunk, struck a utility pole, and fled the scene on foot.

On March 14, 2017, A.S. appeared in juvenile court and admitted he committed the acts described in the delinquency petition. The court ordered him to take a drug test during a break in the proceedings, and he tested positive for marijuana, amphetamines, and methamphetamine. A.S. also answered a

drug and alcohol use questionnaire and indicated he was "unlikely" to quit using drugs. Tr. Vol. II, p. 21. The court determined A.S. was a delinquent child and placed him in the juvenile detention center (JDC) until he produced a clean drug screen, at which time he would be released to probation with electronic monitoring. Among other conditions of probation, the court ordered A.S. to: (1) complete an addictions assessment and follow all treatment recommendations; (2) participate in therapy; and (3) avoid unlawful behavior.

A.S. produced a clean drug screen on March 24, 2017, and was released from the JDC. On June 7, 2017, the juvenile court released A.S. from electronic monitoring at the request of A.S.'s case manager but kept A.S. on probation.

On June 23, 2017, A.S.'s probation officer filed with the juvenile court a request to modify A.S.'s placement. During a June 27, 2017 hearing, the officer testified that A.S. had tested positive for marijuana five times in two months and had canceled or missed several appointments for court-ordered drug counseling. Further, A.S. had showed up for one counseling appointment under the influence of marijuana and had further admitted to consuming alcohol the night before. A.S.'s mother had not attended any family counseling sessions. The State asserted that A.S. was not benefitting from being placed at home and requested that A.S. be returned to the JDC until an inpatient treatment center agreed to accept him. The court granted the State's request and placed A.S. in the JDC pending placement in an inpatient facility.

[7] On July 13, 2017, A.S.'s probation officer notified the juvenile court that the DePaul Academy (DePaul) had agreed to accept A.S. for its inpatient treatment program. The court ordered that A.S. be placed at DePaul. A.S. arrived at DePaul on July 20, 2017. Appellant's App. Vol. 2, p. 70.

[8] On November 16, 2017, A.S.'s probation officer reported to the juvenile court that A.S. had been discharged from DePaul for serious violations of the facility's rules. Among other acts of misconduct, which we discuss in more detail below, DePaul employees discovered A.S. was helping to plan an escape from the facility. The plan involved potentially assaulting DePaul employees. DePaul employees reported that A.S. "makes zero effort in participating in any way" and "is making no progress in the program." *Id.* at 80. Based on the information from DePaul, the State recommended modifying A.S.'s placement by sending him to the Indiana Department of Correction (DOC). The juvenile court ordered that A.S. be placed in the JDC pending adjudication of the State's request to modify placement.

[9] On November 20, 2017, the court held an evidentiary hearing on the State's request to modify A.S.'s placement. At the end of the hearing, the court awarded wardship of A.S. to the DOC and issued an order to that effect on the same day. On December 20, 2017, the court issued an amended order placing A.S. in the DOC, recommending that he be placed in a "community based regional campus." *Id.* at 99. The court identified the following reasons for modifying placement:

    1. Community Resources have been exhausted.

2. Minor's behavior is dangerous to the community and minor requires the most restrictive placement available to the Court.

3. Placement is in minor's best interest because it will give the minor the opportunity for more intensive treatment in a secure setting.

*Id.* This appeal followed.

# Discussion and Decision

## I. Assistance of Counsel

A.S. argues he received ineffective assistance of counsel during the November 20, 2017 modification hearing. To establish ineffective assistance, a claimant must prove both elements of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). *Timberlake v. State*, 690 N.E.2d 243, 259 (Ind. 1997). The claimant must show, first, that counsel's actions fell below an objective standard of reasonableness, and second, that the substandard performance was so prejudicial as to deny the claimant a fair trial. *Id.* To establish prejudice, a claimant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). We can dispose of a claim of ineffective assistance upon the failure of either element. *Walker v. State*, 988 N.E.2d 1181, 1186 (Ind. Ct. App. 2013), *trans. denied*.

We presume counsel is competent. *Johnson v. State*, 674 N.E.2d 180, 184 (Ind. Ct. App. 1996), *trans. denied*. Evidence of isolated poor strategy, inexperience,

or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Walker*, 988 N.E.2d at 1186.

[12] The State argues A.S. may not present a claim of ineffective assistance of counsel under the *Strickland* standard because the right to effective assistance of counsel, as set forth in *Strickland*, is grounded in criminal law, and juvenile delinquency proceedings are civil in nature.[1] In *S.T. v. State*, 764 N.E.2d 632 (Ind. 2002), the Indiana Supreme Court considered an appeal by a juvenile who claimed he had received ineffective assistance of counsel, and the Court squarely addressed the claim. Following precedent, we reject the State's argument and turn to the merits of A.S.'s claim.

[13] Attorney Kelly Stansbury represented A.S. throughout the juvenile court proceedings. A.S. argues that during the November 20, 2017 hearing, he testified that he did not think he should go to the DOC, but Attorney Stansbury effectively agreed with the State that placement at the DOC was the only appropriate outcome. Attorney Stansbury told the juvenile court, "with these violations, it's really hard to recommend an alternative that's not been tried and that's kind of all we're really left with other than the Department of Corrections, which hasn't been tried." Tr. Vol. II, p. 79. He further stated that other residential inpatient facilities would likely refuse to accept A.S. based on his record. Attorney Stansbury concluded, "unfortunately, I don't know what

---

[1] The State concedes that respondents in juvenile delinquency proceedings have a statutory right to counsel. *See* Ind. Code §§ 31-32-2-2 (1997), 31-32-4-1 (1997).

else to – to recommend." *Id.* at 80. A.S. claims his attorney "failed to subject the prosecutor's case to meaningful adversarial testing." Appellant's Br. p. 25.

[14] Even if Attorney Stansbury's statements to the juvenile court fell below an objective standard of reasonableness, A.S. must demonstrate prejudice. That is, A.S. must demonstrate a reasonable probability that if his attorney had argued against sending A.S. to the DOC, then the court would not have sent him there.

[15] During his stint on probation A.S. established a record of noncompliance with the terms of probation, including committing new unlawful acts. When A.S. appeared in juvenile court on March 14, 2017, to admit to committing the acts alleged in the State's petition of delinquency, he was under the influence of marijuana, amphetamines, and methamphetamines. He stated in a questionnaire that he was "unlikely" to quit using controlled substances. The court ordered A.S. to be confined in the JDC until he had a clean drug test and stated that he would then be released to probation with electronic monitoring.

[16] A.S. initially performed well enough on probation that his probation officer asked to have the electronic monitoring removed, but his performance took a turn for the worse. He tested positive for marijuana on five occasions and was discharged from his outpatient treatment facility for missing appointments. On one occasion, A.S. showed up for an appointment under the influence of marijuana and admitted to consuming alcohol the night before. During the June 27, 2017 modification hearing, A.S. admitted to the court that he had used marijuana while on probation. Use of marijuana and consumption of alcohol

as a minor are both new offenses. Further, A.S.'s counselors reported that he displayed "lack of motivation" and was uninterested in working on his substance abuse issues. Tr. Vol. II, p. 47.

[17] Based on A.S.'s record of misconduct while on home placement, the court placed him at DePaul for inpatient drug and behavioral treatment. During an October 10, 2017 hearing, A.S.'s probation officer reported A.S. was "struggling" with "doing things on his own time and pushing the limits with staff about being able to accept redirection." *Id.* at 62. The officer further stated that A.S. was "lacking in motivation." *Id.*

[18] After that hearing, A.S.'s misconduct intensified to the point that DePaul expelled him. He: (1) assisted in plotting an escape attempt that could have resulted in injury to DePaul employees; (2) tried to make alcohol in his room; (3) was involved in an altercation with another resident that resulted in injury to a DePaul employee; (4) failed to complete homework and was kicked out of group therapy for sleeping; (5) encouraged other residents to act out; and (6) attempted to share medicine with another resident. DePaul employees further reported that A.S. "makes zero effort in participating in any way" and "is making no progress in the program." Appellant's App. Vol. 2, p. 80. The juvenile court told A.S.:

> I'm making you a ward [of the DOC] because you attempted to run from placement, because staff was assaulted, because you made alcohol, I guess, in placement. You undermine the treatment of others, you cheeked medication and gave it to peers and that, too, put other people at risk of harm.

Tr. Vol. II, p. 83.

[19] A.S. failed to comply with the terms of probation while living at home and seeking treatment on an outpatient basis, and he further failed to comply with the terms of probation while confined in an inpatient treatment center. Clearly, he was unsuccessful in settings less restrictive than the DOC. In both settings, A.S. demonstrated a lack of interest in making the necessary changes in his life to avoid future misconduct. Further, he engaged in a pattern of misconduct and committed acts involving marijuana and alcohol that could have supported the filing of new delinquency petitions. We conclude from this extensive record that the juvenile court would have most likely sent A.S. to the DOC after the November 20, 2017 hearing even if A.S.'s counsel had urged the court to choose a less restrictive placement. A.S. has failed to demonstrate prejudice from his attorney's decision not to challenge his placement at DOC, and his claim of ineffective assistance of counsel fails.

## II. Due Process

[20] A.S. claims that his attorney's decision not to argue against placement at the DOC violated his right to due process under the United States Constitution and the Indiana Constitution. Whether a party was denied due process is a question of law that we review de novo. *Hillgoss v. State*, 45 N.E.3d 1228, 1230 (Ind. Ct. App. 2015); *D.G. v. S.G.*, 82 N.E.3d 342, 347 (Ind. Ct. App. 2017), *trans. denied*.

[21] The Fourteenth Amendment bars states from depriving a person "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Article one, section twelve of the Indiana Constitution provides, in relevant part, "All courts shall be open, and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." A.S. also cites to article one, section thirteen of the Indiana Constitution, which provides in relevant part: "In all criminal prosecutions, the accused shall have the right . . . to be heard by himself and counsel . . . ."

[22] Although the due course of law clause differs from the Fourteenth Amendment's Due Process Clause, we apply the same analysis to claims under either provision. *Gingerich v. State*, 979 N.E.2d 694, 710 (Ind. Ct. App. 2012), *trans. denied*. We investigate whether a deprivation of life, liberty or property by the state was "preceded by notice and an opportunity for hearing appropriate to the nature of the case." *Id.* (quotation omitted). Due process generally includes: "representation by counsel, written notice of the claimed violations, disclosure of the opposing evidence, an opportunity to be heard and present evidence, and the right to confront and cross-examine witnesses in a neutral hearing before the trial court." *Cox v. State*, 706 N.E.2d 547, 550 (Ind. 1999).

[23] A.S.'s Fourteenth Amendment claim is intertwined with his claim of ineffective assistance of counsel. In *Strickland*, the United States Supreme Court stated, "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . . ." 466 U.S. at 684-85, 104 S. Ct. at 2063. A.S.'s due process argument focuses on his Sixth Amendment right to effective assistance of counsel: "When the Sixth

Amendments [sic] rights to counsel are violated, fundamental fairness cannot be the result." Appellant's Br. p. 31. Having determined that A.S. is not entitled to prevail on his claim of ineffective assistance of counsel, we likewise conclude that he is not entitled to prevail on his Fourteenth Amendment claim.

[24] Turning to A.S.'s due course of law clause claim, he cites to *Edwards v. State*, 902 N.E.2d 821 (Ind. 2009), and *Sanchez v. State*, 749 N.E.2d 509 (Ind. 2001), in support. Those cases are factually distinguishable and addressed dissimilar due process claims. *Edwards* addressed whether mentally impaired persons have a broader right to self-representation under article one, section thirteen than those afforded under the federal constitution. *Sanchez* addressed whether article one, section twelve required the trial court to allow Sanchez to present a defense of voluntary intoxication. A.S.'s case is different from those two cases, and they do not mandate a conclusion that A.S. was deprived of due process under the Indiana Constitution. We conclude that his due process claims must fail.

## III. Modification of Placement

[25] A.S. argues the trial court erred in placing him at the DOC because he acknowledged during the November 20, 2017 hearing that he had made poor choices and was trying to change his negative behavior. Once a juvenile court determines a child is a delinquent, the court must hold a dispositional hearing to consider, among other topics, "[a]lternatives for the care, treatment, rehabilitation, or placement of the child." Ind. Code § 31-37-18-1 (1997). When the State seeks to modify a child's placement, the juvenile court must

also hold a hearing. Ind. Code § 31-37-22-3 (2009). In deciding where a child should be placed, the court must consider the following:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6 (1997). Without question, the statute requires the juvenile court to select the least restrictive placement in most situations; however, the statute also permits a court to impose a more restrictive placement under certain circumstances. *J.S. v. State*, 881 N.E.2d 26, 28-29 (Ind. Ct. App. 2008).

[26] Subject to these statutory considerations, we review the trial court's choice of disposition for an abuse of discretion. *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006). An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before

the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *D.B. v. State*, 842 N.E.2d 399, 404-05 (Ind. Ct. App. 2006).

[27]    We have already discussed A.S.'s extensive pattern of misconduct while on probation. Considering A.S.'s repeated and serious failures to comply with the terms of probation while living at home and while living in an inpatient treatment facility, the trial court acted well within its discretion in designating A.S. as a ward of the DOC. Less restrictive placements had been tried and had failed. *See K.S.*, 849 N.E.2d at 544 (affirming juvenile court decision to place K.S. with DOC after repeated violations of the terms of probation; commitment to DOC was necessary to address juvenile's counseling needs and the needs of the community).

# Conclusion

[28]    For the reasons stated above, we affirm the judgment of the juvenile court.

[29]    Affirmed.

Robb, J., and Brown, J., concur.