Steve PIGG, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 52A02–0907–CV–666.

Court of Appeals of Indiana.

June 14, 2010.

**800**

Steve Pigg, Carlisle, IN, Appellant Pro Se.

J. Richard Kiefer, Bingham McHale LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Steve Pigg (Pigg), appeals the trial court's denial of his motion to compel the delivery of money from his attorney pursuant to Ind.Code § 33–21–1–9.[1]

We affirm.

1. On April 9, 2010, we granted intervener status to J. Richard Kiefer and accepted him as an Appellee in this case.

### ISSUES

Pigg raises two issues for our review, which we restate as:

(1) Whether the trial court abused its discretion by not holding an evidentiary hearing; and

(2) Whether the trial court erred by denying Pigg's motion to compel the delivery of money.

### FACTS AND PROCEDURAL HISTORY

In 1991, Pigg pled guilty to the murders of Jason Brown and Nanette Scott, and was sentenced to an aggregate sentence of eighty years. Pigg's trial counsel, Duge Butler (Butler), referred Pigg to J. Richard Kiefer (Kiefer), an attorney, to consider his options for appeal or post-conviction remedies. On January 22, 1992, Pigg's mother paid a $5,000 retainer to Kiefer and Kiefer agreed to work on Pigg's case at an hourly rate of $175. Kiefer filed a notice of appeal with the trial court and requested an extension of time from the Indiana Court of Appeals, preserving Pigg's opportunity to appeal and allowing Kiefer time to obtain and review the transcript of proceedings and meet with Pigg. On May 22, 1992, Kiefer met with Pigg to discuss the possibility of an appeal challenging the trial court's imposition of a fine[2] that was not provided for in Pigg's plea agreement. By letter on June 9, 1992, Kiefer recommended that Pigg not pursue an appeal or post-conviction relief seeking to undo Pigg's guilty plea because of the likelihood that Pigg would be convicted of both murders if he went to trial and potentially receive a greater sentence. Further, Kiefer explained to Pigg that a large portion of his money would be exhausted in a post-conviction proceeding,

2. The fine was for the establishment of a trust fund for Nanette Scott's children.

leaving Pigg with low resources to hire counsel for a trial. Ultimately, Kiefer advised that Pigg wait approximately five years, accomplish self improvement goals while incarcerated, and then pursue a modification of his sentence.

On August 14, 1992, Kiefer sent Pigg another letter acknowledging Pigg's desire to undo his guilty plea, and enclosed an excerpt from a recent appellate decision. Kiefer repeated his prior advice and informed Pigg that if he wished to pursue post-conviction relief at that time, Kiefer would not represent Pigg in that endeavor.

On December 28, 2007, over fifteen years later, Pigg sent a letter to Kiefer requesting the return of the retainer which his mother had paid to Kiefer. On January 17, 2008, Kiefer sent Pigg a letter in response stating that Pigg's demand for a return of funds was "both unwarranted and untimely." (Appellant's App. p. 12). On January 31, 2008, Pigg filed a motion to compel Kiefer to return the unearned portion of the $5,000 retainer in Miami Circuit Court under the cause number associated with his convictions. On February 4, 2008, the trial court *sua sponte* dismissed the motion to compel stating that it did not have "subject matter jurisdiction to proceed under a criminal litigation caption in connection with a collection dispute." (Appellant's App. p. 14). Pigg appealed, and on March 11, 2009, we issued a memorandum decision concluding that Pigg had made a *prima facie* showing that the Miami Circuit Court had subject matter jurisdiction over his motion. *Pigg v. State*, No. 52A02–0811–CV–1053, slip op. at 5, 2009 WL 637476 (Ind.Ct.App., March 11, 2009).

On March 16, 2009, the trial court issued an Order for trial by affidavit and set a schedule for submission of documents by the parties. On April 14, 2009, Pigg submitted documents and affidavits advancing his claim. On May 4, 2009, Kiefer re-sponded and informed the trial court that he had located Pigg's legal file, but not his billing records and documentation of the number of hours he had worked on Pigg's case which would have been maintained in a separate file. However, Kiefer estimated from his review of Pigg's legal file that the amount of time he had worked on Pigg's case, and the related expenses, would have exceeded the $5,000 retainer paid on Pigg's behalf. Therefore, "it was likely that [Kiefer] was actually owed additional legal fees from [ ] Pigg or his mother but [Kiefer] did not charge [ ] Pigg or his mother for those legal fees." (Appellant's App. p. 265). On June 1, 2009, the trial court issued an Order denying Pigg's request for reimbursement of money, finding in pertinent part that Kiefer had "reasonably documented his actions on behalf of [Pigg], particularly in view of [Pigg's] dilatory failure to raise the issue of reimbursement until January 31, 2008," and that based upon the documentation, Pigg's legal fees likely exceeded the retainer fee of $5,000. (Appellant's App. p. 351).

Pigg now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *No Evidentiary Hearing*

Pigg contends that the trial court abused its discretion by not holding an evidentiary hearing. Specifically, Pigg argues that Indiana law requires an evidentiary hearing to consider motions to compel the delivery of money, and that a hearing would have better permitted him to develop his claims.

The statute which gives an opportunity for clients to submit a motion for reimbursement from their attorneys to a court is Indiana Code section 33–43–1–9, which provides:

If, on request, an attorney refuses to deliver over money or papers to a person from whom or for whom the attorney has received them, in the course of the attorney's professional employment, the attorney may be required, after reasonable notice, on motion of any party aggrieved, by an order of the court in which an action, if any, was prosecuted or if an action was not prosecuted, by the order of any court of record, to deliver the money or papers within a specified time, or show cause why the attorney should not be punished for contempt.

Similarly, Indiana's rules governing the professional conduct of attorneys provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

Indiana Professional Conduct Rule 1.16(d).

Pigg cites to *Smith v. State*, 426 N.E.2d 402 (Ind.1981), to support his claim that the trial court should have held a hearing. Smith was tried and convicted in Shelby Circuit Court. *Id.* at 403. After his sentencing, he contacted his attorney by letter requesting all documents from his case. *Id.* The attorney did not respond, so Smith filed a motion for the trial court to order his attorney to deliver the documents. *Id.* The trial court did not act on the motion for two months, but then, on the day that Smith inquired about the motion, the trial court denied Smith's motion. *Id.* Our supreme court held that the denial of a motion for an attorney to deliver money of

paper pursuant to former Indiana Code section 34–1–60–10 (the prior version of I.C. § 33–43–1–9) was a final appealable order. *Id.* at 404. The *Smith* court remanded for the trial court to hold a hearing and then rule on the motion. *Id.*

Pigg also relies on *Ferguson v. State*, 773 N.E.2d 877 (Ind.Ct.App.2002). Ferguson had been convicted of attempted rape and attempted murder, and his sentence was enhanced due to him being an habitual offender in 1980. *Id.* at 878. In 1994, the trial court granted Ferguson's motion to correct erroneous sentence, removed the habitual offender enhancement, and reduced Ferguson's sentence by thirty years. *Id.* Thereafter, Ferguson's brother paid $1,500 to retain an attorney to assist Ferguson in his quest to receive further relief. *Id.* at 879. On January 24, 2002, Ferguson wrote the attorney asking for the return of the unearned portion of the retainer. *Id.* The attorney refused, contending that he had performed the review which Ferguson hired the attorney to conduct, but had concluded that there was not "the slightest chance that the court would grant a 2nd PCR." *Id.* Ferguson filed a motion to compel the attorney to return money pursuant to Indiana Code section 33–21–1–9, but the trial court denied that motion the day after it was filed without holding a hearing. *Id.* at 880. We held that the trial court lacked the discretion to deny Ferguson's request for the return of the unearned portion of the retainer. *Id.* Furthermore, we stated that "upon remand a hearing will be necessary." *Id.* at 881. We explained that "a hearing would aid the trial court in determining what portion of the retainer fee, if any, the defendant is entitled to." *Id.*

Indiana Code section 33–43–1–9 does not state that a hearing is required, or how evidence may be developed. However, Pigg is correct that both *Smith* and *Ferguson* remanded so that hearings could be

held. That being said, neither opinion has instructed how such a hearing is to take place, or whether a trial by affidavit would satisfy the requirement for a hearing. Moreover, both *Smith* and *Ferguson* involved situations where the trial court's dismissed the claims without any consideration of evidence, a claim which Pigg cannot make here.

■ While neither the *Smith* court nor the *Ferguson* court made explicit reference to notions of due process, we must note the undeniable reality that each court ordered a hearing upon remand because *Smith* and *Ferguson* had not received a full and fair opportunity to present their claims—*i.e.* due process. Patently, Indiana Code section 33–43–1–9 protects the property rights of clients to the tangible product of their representation (*i.e.* the "papers") and to the portion of money which they pay to attorneys which is ultimately not earned. The law prevents clients from having to file independent lawsuits in contract or *quasi*-contract in order to obtain what is rightfully theirs. Thus, by providing an opportunity for recourse in our courts, Indiana Code § 33–43–1–9 has made the determination of whether to grant or deny a motion for delivery of papers or money from an attorney a state action, making such a determination subject to due process considerations. "The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action which deprives a person of life, liberty, or property without the 'process' or 'course of law' that is due, that is, a fair proceeding." *In re Adoption of L.D.,* 925 N.E.2d 734, 744 (Ind.Ct.App.2010). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Once it is determined that the Due Process Clause applies, "the question remains what process is due." *Cleveland Bd. of Educ.,* 470 U.S. at 541, 105 S.Ct. 1487 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). Due process which comports with the Fourteenth Amendment in civil proceedings is a flexible concept which entitles litigants to a full and fair opportunity to litigate their claim. *See Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 480, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

■ Before we address whether Pigg was afforded a full and fair opportunity to litigate his claim, we note that Pigg made no objection to the trial court, nor any request that a hearing be held. Rather, Pigg submitted affidavits and documents in attempt to persuade the trial court to rule in his favor. Due process rights are subject to waiver, and claims are generally waived if raised for the first time on appeal. *See, In re K.S.,* 750 N.E.2d 832, 834 n. 1 (Ind.Ct.App.2001) (noting waiver of a claimed due process violation for lack of a permanency hearing because the allegation of error was raised for the first time on appeal). Waiver notwithstanding, we will consider whether the trial court provided Pigg a sufficient opportunity to litigate his case.[3]

■ Kiefer contends that because Pigg waited nearly sixteen years to seek a delivery of money, and because Pigg is currently incarcerated, the trial court was within

---

3. Neither Smith nor Ferguson requested a hearing during the trial court proceedings, but each was confronted with an abrupt ruling from the trial court making such a request unfeasible.

its discretion to request that the parties submit documents and affidavits and make its determination upon a paper record. In support, Kiefer notes the broad principle that "[a]ll matters which relate to the orderly conduct of trial or are necessary to proper administration of justice in court and are not regulated by precise statute or rule, are generally within the discretion of the trial court." *Archem, Inc. v. Simo,* 549 N.E.2d 1054, 1060 (Ind.Ct.App.1990), *cert. denied,* 498 U.S. 1076, 111 S.Ct. 944, 112 L.Ed.2d 1032 (1991). We agree with Kiefer, but conclude that more direct precedent supports the conclusion that the trial court did not abuse its discretion.

In *Niksich v. Cotton,* 810 N.E.2d 1003, 1004 (Ind.2004), our supreme court considered, whether, as a matter of federal due process, an incarcerated individual had a right to be present at a small claims trial. The *Niksich* court held that:

> [U]nder "extraordinary circumstances" presence of a party may not be required. An incarcerated plaintiff may present such circumstances. Niksich may seek to submit the case through documentary evidence, to conduct the trial by telephonic conference, to secure someone else to represent him at trial, or to postpone the trial until his release from incarceration. [ ] We think the trial court has wide discretion in selecting any of these options after evaluating the prisoner's need to be present against concerns of expense, security, logistics and docket control.

*Id.* at 1008 (internal citations omitted). Here, Pigg was incarcerated, and would be for years to come. Therefore, we conclude that the trial court had broad discretion to determine how best to afford Pigg a full and fair opportunity to litigate his claim.

The trial court asked the parties to submit affidavits and evidence so that it could conduct a "Trial by Affidavit." (Appel-

lant's App. p. 23). The trial court set no boundaries on the submissions from the parties. Pigg designated several exhibits in attempt to prove his claim that he was owed unearned money from the retainer that had been paid to Kiefer, including an affidavit from himself and an affidavit from his mother. Altogether, we conclude that the trial court provided a full and fair opportunity for Pigg to litigate his claim and supporting evidence to the trial court. Ultimately, Pigg has waived his claim of injury due to lack of a hearing by failing to request a hearing; but, waiver notwithstanding, Pigg has failed to demonstrate any abuse of discretion by the trial court in holding a trial by affidavit.

## II. *Substance of the Trial Court's Denial*

■ Pigg also contends that the trial court erred by denying his motion to compel the delivery of unearned money. Specifically, Pigg argues that attorneys are required to return unearned money upon the termination of representation, and that trial courts are required to order delivery of unearned money if a former client files a motion under I.C. § 33–43–1–9.

■ Pigg relies on *McKim v. State,* 528 N.E.2d 484, 485–86 (Ind.Ct.App.1988), where we held that the delivery of papers by an attorney to a former client was not subject to the discretion of the trial court, but rather required under I.C. § 33–43–1–9 and Prof. Cond. R. 1.16(d). He also relies upon *Ferguson,* where we extended the holding of *McKim* to unearned money held by the attorney. *Ferguson,* 773 N.E.2d at 880. However, Pigg's argument assumes that Kiefer was paid money which he did not earn through his work, which is opposite to the finding of the trial court. That being said, where, as here, the trial court has ruled on a paper record, we owe the trial court's findings and judgment no deference and review the decision *de novo.*

*State ex rel. Zoeller v. Aisin USA Mfg., Inc.*, 926 N.E.2d 83, 87 (Ind.Ct.App.2010).

When Pigg's mother hired Kiefer to represent her son, Kiefer informed her that he would bill at a rate of $175 per hour, which would permit him to work on Pigg's case for 28.6 hours before expending the entire $5,000 retainer fee which Pigg's mother had paid. From the letters submitted as evidence by Kiefer, we ascertain that Kiefer considered three avenues of representation for Pigg: direct appeal seeking to overturn the guilty plea; post-conviction relief seeking to overturn the guilty plea; and possibility of a sentence modification in the future. Kiefer noted in his letters that he had met with Pigg in person where Pigg was incarcerated; contacted Pigg's trial counsel; filed legal documents with the trial court and Indiana Court of Appeals; reviewed the transcripts from Pigg's trial court proceedings, which consisted of a 71–page plea hearing transcript, and a 135–page sentencing hearing transcript; wrote Pigg a lengthy letter detailing his considerations and advice; communicated with Pigg further to learn that Pigg did not want to follow his advice; and sent an additional letter rehashing his prior advice with an enclosed excerpt from a then recent appellate decision. In his final letter, Kiefer informed Pigg that he would not represent him in proceedings seeking to overturn his guilty plea due to the fact that it was unlikely that he would succeed. Additionally, Kiefer paid $342.50 from Pigg's escrow account for the production of the transcripts. Kiefer estimated that the amount of time he spent on Pigg's representation likely exceeded 28.6 hours, although he cannot be absolutely certain because he is unable to locate his billing records for Pigg's representation. In light of Pigg's lengthy delay in requesting any unearned money, we cannot fault Kiefer for having lost or destroyed the file which contained his billing information for his representation of Pigg. We conclude from the evidence before us that Kiefer has proven that no unearned portions of the retainer paid for Pigg's representation remained upon Kiefer's termination of that representation.[4]

### CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by ordering a trial by affidavit, and that Kiefer proved that no unearned portion of the retainer fee paid on Pigg's behalf remained at the termination of his representation of Pigg. Therefore, the trial court did not err by denying Pigg's motion for the delivery of money.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.

---

4. Because we conclude that Kiefer proved that no unearned portions of the retainer paid on Pigg's behalf remained upon the termination of Kiefer's representation, we need not consider Kiefer's argument on appeal that Pigg's claim is barred by the doctrine of laches.