## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 13 2018, 10:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Lake County Public Defender's Office –
Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael J. Davis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 13, 2018 <br><br> Court of Appeals Case No. <br> 45A05-1712-CR-2920 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Clarence D. Murray, Judge <br><br> Trial Court Cause No. <br> 45G02-8512-CR-195 |

**Mathias, Judge.**

[1] After being tried *in absentia* in Lake Superior Court in 1985, Michael J. Davis ("Davis") was found guilty of criminal deviate conduct and was sentenced in

2017 to the presumptive sentence of thirty years of incarceration. Davis appeals and presents three issues, which we restate as:

I. Whether the trial court violated the Interstate Agreement on Detainers ("IAD") when it denied Davis's various *pro se* requests for disposition while he was incarcerated in Colorado on other convictions;

II. Whether the trial court violated Davis's right to a speedy trial when it denied his *pro se* requests for disposition; and

III. Whether Davis's thirty-year sentence is inappropriate.

[2] We affirm.

## Facts and Procedural History

[3] In 1985, the victim in this case, C.B., lived in Kouts, Indiana with her husband and children. In November 1985, she moved into a battered women's shelter in Hobart, Indiana. When her estranged husband found her there, she moved to another women's shelter in Hammond, Indiana.

[4] On November 26, 1985, C.B. became ill, so the shelter contacted a bus service to transport C.B. to the hospital. Davis was the driver of the bus, and C.B. was the only passenger. Instead of taking C.B. to the hospital, Davis parked the bus and locked the doors. He brandished a knife, grabbed C.B. by the hair, and told her to go to the back of the bus. Davis repeatedly told C.B. that he would not hurt her if she cooperated. Davis forced C.B. to the floor of the bus and pushed the knife into her stomach and neck when she resisted. Davis forced C.B. to disrobe, then twice placed his finger in her vagina. He also forced her to perform oral sex on him. C.B. attempted to resist and screamed, but Davis held

her down. During her attempts to resist, C.B. cut her fingers on the knife. As C.B. continued to struggle, Davis told her, "there was a lot of other women that were easier to get than [her]," and that she was "just about ready to have a nervous breakdown[.]" Tr. Vol. II, p. 30. Davis therefore stopped his attack and told C.B. to calm down, which she did not. Davis told C.B. to put her clothes on and took her to a nearby hospital, where he dropped her off.

[5] C.B. told a nurse inside the hospital what had happened, and the hospital staff completed a rape kit to examine C.B. for evidence of sexual assault. Serological testing confirmed the presence of seminal fluid in C.B.'s mouth after the attack. C.B. later identified Davis as her attacker and noted that he was uncircumcised. The police arrested Davis the next day and found in his possession a knife, which C.B. later confirmed was the one Davis used during the attack. Under police questioning, Davis denied attacking C.B., but admitted that he was uncircumcised.

[6] On December 2, 1985, the State charged Davis with Class A felony criminal deviate conduct, alleging that he knowingly or intentionally forced C.B. to perform or submit to deviate sexual conduct by force or imminent threat of force while armed with a deadly weapon. Davis appeared in person and by counsel on January 29, 1986, and the trial court informed him that his trial was set for March 10, 1986. Davis's counsel successfully moved to continue the trial to April 7, 1986.

[7] At the April 7 trial, Davis failed to appear, and he was tried *in absentia*. At the conclusion of the trial the following day, the jury found Davis guilty. Instead of sentencing Davis *in absentia*, the trial court issued a warrant for his arrest and stated that, once Davis was arrested, he would be sentenced. The trial court did not formally enter a judgment of conviction on the jury's verdict at that time.

[8] Over ten years later, on August 20, 1996, an entry was made in the trial court's chronological case summary ("CCS") stating, "Defendant reportedly in custody in Arapohoe [sic] County, Colorado. Detainer issued by sheriff. Extradition proceedings initiated." Appellant's App. p. 13. The record indicates that Davis was convicted on Colorado charges and sentenced to thirty-two years in the Colorado Department of Corrections. On February 24, 1998, the trial court again noted in its CCS, "Defendant reportedly in custody at Dept of Corrections, Colorado Springs, Colorado. Detainer issued by sheriff." *Id*.

[9] During the ensuing years, Davis made several requests to the Lake Superior Court to dispose of his case, which the trial court denied either because Davis had not followed the proper procedures under the IAD, i.e., first submitting his request to the person having custody of Davis, or because Davis had already been tried and therefore could not be "brought to trial" as set forth in the IAD.[1]

---

[1] Specifically, on February 11, 2002, Davis sent a *pro se* motion to the trial court requesting that he be appointed counsel and that "the existing case now be adjudicated and resolved." Appellant's App. p. 77. The record does not indicate that any action was taken on this motion. On April 20, 2005, Davis sent the trial court a *pro se* letter that the court considered as a request for disposition. The trial court denied this motion on the basis that it was not a valid request under the IAD because there was no indication that Davis had followed the necessary procedural steps under the IAD, such as submitting the request to the official having

Finally, on October 20, 2017, Davis, apparently having been released from incarceration in Colorado, was finally brought before the Lake Superior Court, which found him indigent and appointed counsel for purposes of sentencing. On November 15, 2017, over thirty-one years after Davis's trial, the trial court held a sentencing hearing at which Davis appeared in person and by counsel. The trial court found as aggravating Davis's criminal history, that Davis was in a position of custody and control with his victim, and the nature and circumstances of the crime. The court found no mitigators, but still sentenced Davis to the presumptive sentence of thirty years of incarceration. Davis now appeals.

## I.  Interstate Agreement on Detainers

Davis first argues that the trial court erred as a matter of law by failing to sentence him within 180 days of his requests for disposition, which he argues

---

custody of him. On February 26, 2010, the trial court received from Davis a *pro se* motion to quash detainer and dismiss conviction, again referencing the IAD. The trial court denied this motion on March 8, 2010, again explaining to Davis the procedure he needed to follow. On December 13, 2010, Davis filed another *pro se* request for disposition citing the IAD. The trial court denied this motion too on grounds that Davis had already been tried and convicted. On September 26, 2012, Davis filed a *pro se* Writ of Habeas Corpus ad Prosequendum. The trial court considered this to be another request for disposition and, on October 23, 2012, denied the motion because Davis had again failed to follow the proper steps under the IAD. On April 8, 2016, Davis filed a *pro se* Motion Requesting Final Disposition of Criminal Indictment, claiming that his right to a speedy trial had been violated. The court considered this to be another request for disposition, which it denied with language similar to that in its October 23, 2012 order. On May 2, 2016, Davis filed a *pro se* motion to reconsider, claiming that his claim was not brought under the IAD, but the trial court denied this motion the following day. On August 30, 2017, Davis sent a *pro se* letter to the trial court, along with a form he sent to the warden at the Colorado prison, again referencing the IAD. The trial court denied this request, finding that the IAD did not apply to Davis because he had already been tried and convicted.

was required under the IAD, which is codified at Indiana Code section 35-33-10-4. As explained by our supreme court in *Sweeney v. State*:

> The [IAD] was created to solve several problems which arose from the use of detainers. . . .[2] Before the [IAD] was enacted, there was no legal mechanism for prisoners to clear detainers filed against them by authorities outside the jurisdiction in which they were imprisoned. Consequently, detainers had the capability of restricting, circumscribing, or disrupting the activities, including rehabilitative activities, of prisoners within the "sending state's" prison. This is because in the past, detainers would remain lodged against a prisoner for several years and cause serious problems: (1) the prisoner would be ineligible for work assignments and (2) the prisoner often lost interest in institutional opportunities because he was serving his current sentence without knowing what additional sentences may be imposed on him or if and when he would be able to employ the education and skills developed while in prison. . . .
>
> As a result of the problems created by the use of detainers, the federal government and all the states that adopted the IAD determined that the primary purpose of the IAD would be to provide for expeditious disposition of all outstanding charges which may affect the conditions or duration of imprisonment and treatment, and also to prescribe procedures by which a state may obtain a prisoner incarcerated in another state. The IAD also provide[s] cooperate procedures among member states to facilitate such disposition.

---

[2] "Although the IAD does not define a detainer, the congressional record provides that '[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" *Sweeney v. State,* 704 N.E.2d 86, 95 (Ind. 1998) (quoting *United States v. Mauro*, 436 U.S. 340, 359 (1978)).

704 N.E.2d 86, 95–96 (Ind. 1998) (citations and internal quotations omitted).[3]

[12] Here, Davis argues that he sent the trial court several requests for disposition that triggered a 180-day time limit set forth in the IAD within which the trial court had to dispose of his case. Davis refers to Article 3 of the IAD, which provides:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any *untried* indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint*; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Ind. Code § 35-33-10-4, IAD Art. 3(a) (emphases added).

[13] As explained in *Sweeney*, "Article 3 establishes a procedure by which a prisoner against whom a detainer has been lodged can demand a speedy disposition of

---

[3] Article 4 of the IAD provides the means by which a prosecutor can obtain temporary custody of a defendant in order to dispose of outstanding charges. *Sweeney*, 704 N.E.2d at 96. Pursuant to Article 4, the prisoner must be brought to trial within 120 days of his or her arrival in the receiving state. *Id*. If the prisoner is not brought to trial within the 120-day time limit, or if the prisoner is returned to the "sending state" without bringing the prisoner to trial, the charges will be dismissed with prejudice. *Id*. "This is often referred to as the 'anti-shuffling' provision." *Id*.

the charges." 704 N.E.2d at 96. If the prisoner makes such a request, he must be "brought to trial" within 180 days. *Id*. (citing IAD Art. 3(a)).

[14] The State argues that the trial court properly denied Davis's motions for disposition and that the 180-day time limit of IAD Article 3(a) was not triggered because the plain text of this provision presumes that the prisoner seeking disposition is facing *untried* charges. We agree.

[15] Article 3(a) applies only when "there is pending in any other party state any *untried* indictment, information or complaint" against the prisoner. IAD Art. 3(a) (emphasis added). Moreover, Article 3(a) provides that such a prisoner "shall be *brought to trial* within one hundred eighty (180) days" after making his request for disposition. *Id*. (emphasis added).

[16] None of this is applicable to Davis. There was no *untried* information pending against him, as he had already been tried and found guilty. Therefore, he could not be "brought to trial" within 180 days for the simple reason that he had already been brought to trial, albeit *in absentia*.

[17] Davis nevertheless claims that because he has not been sentenced, and because there is no indication that the trial court entered a judgment of conviction against him after his 1986 trial, he was still facing "untried" charges and should have been sentenced within 180 days of his various requests. We have already rejected a similar argument.

[18] In *Gilbert v. State*, 982 N.E.2d 1087 (Ind. Ct. App. 2013), this court held that the term "trial" as used in Article 4 of the IAD did not include entering judgment of conviction or sentencing. In that case, Gilbert had been transferred from prison in Kentucky to Indiana to face pending charges and was returned to Kentucky after the trial court accepted his plea of guilty, but before the trial court entered judgment of conviction and sentenced him. Gilbert was subsequently returned again to Indiana, where the trial court entered judgment and sentenced the defendant.

[19] On appeal, Gilbert argued that the charges against him in Indiana should have been dismissed pursuant to the "anti-shuffling"[4] provisions of the IAD when he was returned to Kentucky after pleading guilty in Indiana, but before the trial court accepted the plea and sentenced him. Gilbert argued that the term "trial," as used in the IAD's anti-shuffling provision, included entering judgment of conviction and sentencing. *Id*. at 1089.

[20] In addressing this issue of first impression, the *Gilbert* court noted that most jurisdictions had held that "the IAD's anti-shuffling provision is not violated when a defendant is transferred back to the state of origin after pleading guilty

---

[4] The "anti-shuffling" provision of the IAD states:

> (e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article 5(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Ind. Code § 35-33-10-4, Art. 4(e).

but prior to sentencing." *Id*. The *Gilbert* court quoted with approval the following language from the Maryland Court of Special Appeals:

> [T]he term "trial" in [IAD] Article III, as well as in [IAD] Article IV, does not encompass sentencing. If it did, then the anti-shuffling provision of Article III, as well as of Article IV, would have addressed, we can assume, unsentenced convictions, as it does "untried indictments, informations, or complaints." It does not, and thus *we conclude that a "trial," for the purposes of the IAD, refers to the resolution of charges and not necessarily to the imposition of sentence*.

*Id*. (quoting *Painter v. State*, 848 A.2d 692, 703 (Md. Ct. Spec. App. 2004) (emphasis added)).[5]

[21] Although *Gilbert* dealt with the anti-shuffling provision in Article 4 of the IAD, we find its interpretation of the word "trial" to be equally applicable in Article 3's requirement that a prisoner being held in a sending jurisdiction be "brought to trial" in the receiving jurisdiction within 180 days of a proper request for disposition. That is, "trial" refers to the resolution of charges, not sentencing. *Gilbert*, 982 N.E.2d at 1089.

---

[5] As noted in Gilbert, other courts have come to similar conclusions. *See id*. at 1089–90 (citing *United States v. Coffman*, 905 F.2d 330, 333 (10th Cir. 1990) (holding that sentencing is not included in the term "trial" as used in the IAD because transferring a prisoner after trial but before sentencing did "not implicate the prisoner rehabilitation concerns animating the IAD to the same degree as pre-trial transfers"); *State v. Lewis*, 422 N.W.2d 768, 772 (Minn. Ct. App. 1988) (holding that IAD's anti-shuffling provision was not violated when the defendant was returned to federal prison after trial, but before sentencing, in state court); *People ex rel. Harrist v. Dalsheim*, 442 N.Y.S.2d 906, 907 (N.Y. Sup. Ct. 1981) (concluding that IAD's anti-shuffling provision was violated when defendant was returned to Massachusetts prison after pleading guilty to New York charge but before sentencing).

[22] In the present case, Davis had already been tried and found guilty. Thus, under Article 3 of the IAD he could not be "brought to trial" within 180 days of his requests for disposition, because he had already been brought to trial. This is not altered by the fact that the trial court had not yet entered a judgment of conviction on the jury's verdict. In *Gilbert*, the defendant argued that the IAD did apply because, although he had already pleaded guilty, the trial court had not entered a judgment of conviction before he was sent back to Kentucky. Gilbert had, however, already pleaded guilty without the benefit of a plea agreement, and the trial court had accepted his plea. "Therefore, there was nothing left to do in the case except to sentence Gilbert." *Id*. at 1091. The same is true here. The jury had already found Davis guilty, and there was nothing left to do in this case other than sentence Davis.[6]

[23] Accordingly, even if Davis's various *pro se* requests for disposition did trigger the 180-day time limit of IAD Article 3, this provision was inapplicable because Davis had already been "brought to trial" years before his requests. That the trial court had not entered a judgment of conviction or sentenced Davis does not alter the fact that he had already been brought to trial. Because Davis had

---

[6] We find Davis's citation to *Robison v. State*, 172 Ind. App. 205, 359 N.E.2d 924 (1977), unavailing. In that case, the trial court indefinitely postponed pronouncement of judgment and sentence, and a panel of this court held that, when a trial court did so, it "loses jurisdiction to sentence and upon application the defendant should be discharged." 172 Ind. App. at 206, 359 N.E.2d at 924. Notably, the defendant in *Robison* did not flee the jurisdiction. The trial court simply postponed the judgment and sentencing indefinitely. Here, the trial court did not indefinitely postpone judgment and sentencing; it merely waited until Davis was returned to Indiana.

already been brought to trial, there was no violation of IAD Article 3, and the trial court did not err in denying Davis's earlier requests for disposition.

## II. Right to a Speedy Trial

Davis next contends that the delay in sentencing him deprived him of his right to a speedy trial under both the federal Constitution and Indiana Constitution. This argument fails for a variety of reasons.

First, Davis did not present this argument to the trial court, thus the constitutional claims are waived. *See Curtis v. State*, 948 N.E.2d 1143, 1148–49 (Ind. 2011) (holding that appellant forfeited his constitutional speedy trial claim where the issue was not presented to the trial court but for the first time on interlocutory appeal and stating that "[t]o hold otherwise would allow a party to circumvent the well-established rule that issues must be raised before the trial court or are unavailable on appeal." (citing *Pigg v. State*, 929 N.E.2d 799, 803 (Ind. Ct. App. 2010)).[7]

Moreover, we observe yet again that Davis was *tried* over thirty years ago. Therefore, there was no violation of his right to a speedy *trial*. At most, Davis was denied a speedy sentencing. But the Sixth Amendment right to a speedy trial[8] does not apply to sentencing. *See Betterman v. Montana*, ___ U.S. ___, 136

---

[7] Although Curtis involved an interlocutory appeal, we find the court's reasoning equally applicable here. Davis did not raise his constitutional claims before the trial court, and it is well settled that issues not raised at the trial level are generally waived on appeal. *See id.*

[8] Davis also refers to the Indiana Constitution, but does not develop a separate argument as to why the result would be different under the Indiana Constitution. Any claim under the Indiana Constitution is also waived

S. Ct. 1609, 1612 (2016) (holding that the Sixth Amendment guarantee to a speedy trial does not apply once a defendant has been found guilty at trial or pleaded guilty).[9]

Aside from his constitutional claim, Davis also claims that he was entitled by statute to be sentenced within thirty days of his conviction. Indiana Code 35-38-1-2(b) provides, "Upon entering a conviction, the court shall set a date for sentencing within thirty (30) days, unless for good cause shown an extension is granted."[10]

Davis concedes that "his initial absence from the jurisdiction would constitute good cause to delay sentencing." Appellant's Br. at 12. This concession is well taken, as we have long held that a defendant waives the right to be sentenced within thirty days when he or she is responsible for the delay. *Moore v. State*, 154 Ind.App. 482, 497, 290 N.E.2d 472, 480 (1972). But Davis argues that the trial court still failed to act once it discovered his whereabouts and ignored for more than ten years his requests to be sentenced. Davis therefore argues that the

---

for this reason. *See Patterson v. State*, 958 N.E.2d 478, 488 (Ind. Ct. App. 2011) (holding that defendant's argument that search and seizure violated Article 1, Section 11 of the Indiana Constitution was waived where he presented no authority or independent analysis supporting a separate standard under the Indiana Constitution).

[9] This does not mean that there is no constitutional remedy for an inordinate delay in sentencing, as "a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Betterman*, ___U.S. at ___, 136 S. Ct. at 1612.

[10] Indiana Criminal Rule 11 similarly provides, "[u]pon entering a conviction, whether the acceptance of a guilty plea or by finding or by verdict, the court shall sentence a defendant convicted in a criminal case within thirty (30) days of the plea or the finding or verdict of guilty, unless an extension for good cause is shown." Davis makes no argument under Criminal Rule 11.

delay in sentencing him after his requests for final disposition should not be attributed to him.

[29] While we do not condone the seemingly unnecessary delay in sentencing Davis, we cannot say that he has demonstrated any harm as a result of this delay. Davis contends that he was prejudiced by the delay in sentencing because the delay made it impossible for the trial court to order any portion of his Indiana sentence to be served concurrently with the sentence he was serving in Colorado. However, a prisoner incarcerated in another jurisdiction cannot serve his sentence concurrently with a sentence imposed in Indiana. *See Sweeney*, 704 N.E.2d at 110 ("[A] defendant is not even entitled to credit on his Indiana sentence while he is incarcerated in another jurisdiction for a totally different offense."); *Perry v. State*, 921 N.E.2d 525, 527–28 (Ind. Ct. App. 2010) ("Sentences to penal institutions of different jurisdictions are cumulative and not concurrent."); *Saylor v. State*, 565 N.E.2d 348, 350 (Ind. Ct. App. 1991) ("Concurrent sentences may be ordered only when they are to be served in the same institution."). Accordingly, even if Davis had been sentenced in Indiana when he requested, he could not have begun to serve his Indiana sentence until he was released from prison in Colorado. Thus, Davis was not harmed by the admittedly long delay in sentencing him.

### III. Appropriateness of Davis's Sentence

[30] Lastly, Davis claims that the presumptive[11] thirty-year sentence imposed by the trial court was inappropriate.[12] Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Still, we must exercise deference to a trial court's sentencing decision because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. Thus, although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a

---

[11] Although Davis was sentenced after the amendments to Indiana's sentencing statutes enacted in response to *Blakely v. Washington*, 542 U.S. 296 (2004), which adopted an "advisory" sentencing scheme, his offense occurred before these amendments were effective. Therefore, the pre-*Blakely* presumptive sentencing scheme applies to Davis's sentence. *See Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007) (citing *Gutermuth v. State*, 868 N.E.2d 427, 432 n. 4. (Ind. 2007)).

[12] At the time Davis committed his offenses, the relevant Appellate Rule provided that this court could revise a sentence if it was "manifestly unreasonable." *See King v. State*, 769 N.E.2d 239, 241 (Ind. Ct. App. 2002) (citing former Ind. Appellate Rule 17(B)). When the Appellate Rules underwent substantial revision in 2001, this language was initially retained in Appellate Rule 7(B). Effective January 1, 2003, our supreme court amended Appellate Rule 7(B) to provide that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because this rule governs the standard to be used by the court on appeal, we apply the "inappropriate" standard, not the older "manifestly unreasonable" standard. *See Rose v. State*, 810 N.E.2d 361, 364 n.6 (Ind. Ct. App. 2004) (citing *Kien v. State*, 782 N.E.2d 398, 416 n.12 (Ind. Ct. App. 2003)).

perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[31] Our review under Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. The question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Rose v. State*, 36 N.E.3d 1055, 1063 (Ind. Ct. App. 2015). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[32] The presumptive sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *McKinney v. State*, 873 N.E.2d 630, 646–47 (Ind. Ct. App. 2007) (citing *Childress*, 848 N.E.2d at 1081). "Therefore, when the trial court imposes the presumptive sentence, the defendant bears a heavy burden in persuading us that his or her sentence is inappropriate." *Id*.

[33] Here, there is nothing about the nature of Davis's offense that persuades us his presumptive sentence is inappropriate. To the contrary, Davis attacked a resident of a woman's shelter who he was supposed to take to the hospital. Instead, he brandished a knife, threatened her, and sexually assaulted her.

[34] Neither is there anything about Davis's character that convinces us that a sentence lower than the presumptive would be appropriate. He was first

convicted of burglary in Illinois in 1979. In the instant case, Davis fled from Indiana prior to his trial. As a fugitive in Illinois, he was convicted of criminal damage to property in 1992 and felony theft and felony assault in 1996.[13] Also in 1996, Davis was convicted in Colorado for two counts of sexual assault, for which he received an aggregate sentence of thirty-two years in prison.

[35] Under these facts and circumstances, Davis has not met his considerable appellate burden of showing that his presumptive sentence of thirty years is inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

[36] The 180-day time limit set forth in the IAD within which the State has to bring an inmate to trial after a request for disposition was not applicable here because Davis had already been tried. Davis's argument that his constitutional right to a speedy trial was violated is waived. Waiver aside, the right to a speedy trial does not apply to sentencing. Moreover, the delay in Davis's sentencing was initially due to his flight from the State. And Davis has demonstrated no prejudice in any delay in his sentencing after his requests for disposition while incarcerated in Colorado because Davis had no right to serve both his Indiana sentence and his Colorado sentence concurrently. Lastly, Davis's presumptive

---

[13] The record does not disclose why the active Indiana warrant for Davis was not discovered by Illinois authorities when Davis was arrested and convicted on these charges.

sentence of thirty years is not inappropriate. For all of these reasons, we affirm the judgment of the trial court.

[37] Affirmed.

Riley, J., and May, J., concur.